STATE OF NEW JERSEY v. ROBERT M. SHEPPARD, DEFENDANT.

Superior Court of New Jersey
Law Division Union County

Decided July 17, 1984.

*Norman Karpf,* Asst. Pros. for the State (*John H. Stamler,* Prosecutor, attorney).

*Robert D. Zatorski* for defendant (*Cohn & Lifland,* attorneys).

## OPINION

WOLIN, J.S.C.

This case represents another classic confrontation in maintaining the balance between the promotion of legitimate governmental interests and the protection of an individual's Fourth Amendment rights. The question presented before this Court for determination is whether a strip search of an arrestee for motor vehicle violations preceding incarceration, solely due to his inability to post bail and absent probable cause to believe the defendant was concealing weapons or contraband, represents a reasonable administrative procedure. Under the circumstances of this case, the action taken by the police at police headquarters exceeded the bounds of constitutional propriety and must be judicially sanctioned to avoid its repetition.

The facts of the case are relatively uncomplicated. At a suppression hearing testimony was given by Officer James Lavelle of the Westfield Police Department that on Sunday, February 19, 1984 at approximately 5:44 p.m., while on routine patrol in uniform and in a marked patrol car, he stopped defendant's motor vehicle because he noticed it possessed an expired inspection sticker. During a credentials check he learned that the defendant's driving privileges were revoked and that his operation of the motor vehicle was unlawful. He ordered the defendant to exit his vehicle, placed him under arrest and, for his own safety, engaged in a pat down search to insure that the defendant was weapon-free. The defendant was then transported to Westfield Police Headquarters and issued two summonses—one for having an expired inspection sticker and the other for operating a motor vehicle while his driving privileges were revoked. Bail was fixed at $525.00 pursuant to a schedule of pre-set bails established by the magistrate. When the defendant was unable initially to post that amount of bail, he was placed in a detention cell and strip searched. During the strip search, after the defendant had removed his pants, a small glass vial containing a white powdery substance with a small straw was found in the defendant's left front pants pocket. It is the product of this strip search that the defendant seeks to suppress.

Officer Lavelle indicated in his testimony that, without exception, any defendant arrested for a motor vehicle violation who is unable to post bail is placed in a cell and strip searched. He further testified that his conduct of placing the defendant in a detention cell and conducting a strip search was a matter of departmental policy thereby negating any inference of discretionary conduct on his part. Being an officer of only 1½ years' experience, he neither questioned the policy nor disobeyed it. It was clearly his function to secure all of a defendant's

personal property, including his clothes, when placing him in a detention cell awaiting the posting of bail.[1]

At issue in this application is what occurred after defendant's arrival at police headquarters. The initial stop, pat down search for weapons and subsequent arrest for the motor vehicle violations are clearly valid police conduct. *State v. Roberson*, 156 *N.J.Super.* 551, 552 (App.Div.1978). While it is true that most traffic violations proceed by summons rather than arrest, there exists a certain category of motor vehicle offenses, including driving while on the revoked list, that may merit arrest at the scene of the offense. *N.J.S.* 39:5–25 provides in its pertinent part:

> Any police officer may, without a warrant, arrest any person violating in his presence any provision of Chapter Three of this title.

From the recitation of facts, the Court is satisfied that the conduct of Officer Lavelle at the scene was reasonable.

The record is sparse as to the time lapse between the establishment of pre-set bail and the conduct of the strip search. Though the defendant made bail several hours after the initial stop, it is certain that the strip search took place shortly after the issuance of the summonses and his inability to post bail. No reported case in this jurisdiction has heretofore dealt with reconciling these competing interests, public v. private, as they relate to strip searches.

The State relies on *Chimel v. California*, 395 *U.S.* 752, 89 *S.Ct.* 2034, 23 *L.Ed.*2d 685 (1969) and *State v. Sims*, 75 *N.J.* 337 (1978). Though a search incident to a lawful arrest is a recognized exception to the warrant requirement permitting a warrantless search, *Chimel, supra,* the State's reliance on this theory is unsupported by Officer Lavelle's testimony and does not comport with fidelity to the facts of this case. The officer

---

[1]During his testimony the officer indicated that several months earlier a defendant being detained for the commission of a crime had fatally hanged himself. Perhaps this occurrence accounts for the departmental policy requiring the seizure of the defendant's clothes.

engaged in a pat down search at the scene after defendant's arrest and engaged in a more intensive strip search only after he ascertained that the defendant could not immediately post bail and would have to be placed in a detention cell. He was not dissatisfied with the results of his pat down search at the scene of the arrest, nor did he perceive at police headquarters that the defendant possessed a concealed weapon or contraband. His strip search of the defendant was not motivated by any notion of probable cause but was accomplished purely in conformity with departmental policy.

■ In evaluating the reasonableness of any government activity there is a need to balance social and individual interests. *See Katz v. United States,* 389 *U.S.* 347, 88 *S.Ct.* 507, 19 *L.Ed.*2d 576 (1967). Conduct that may be permissible under one set of circumstances may be inappropriate under a different set of circumstances. In each case an objective standard must be applied to ascertain whether the conduct under scrutiny is alien to recognized constitutional safeguards. *See State v. Waltz,* 61 *N.J.* 83 (1972). In *Bell v. Wolfish,* 441 *U.S.* 520, 99 *S.Ct.* 1861, 60 *L.Ed.*2d 447 (1979), strip searches of inmates with exposure of body cavities were permitted after contact visits with a person outside of the institution, and could be conducted without probable cause.[2] In discussing the particular policy under consideration the Court commented that the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application:

> In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted.

In contrast to the objectives sought to be accomplished in *Bell v. Wolfish, supra,*—internal order, discipline and securi-

---

[2] These strip searches occurred at the Metropolitan Correctional Center, a federal institution designed to detain persons awaiting trial, as well as convicted felons awaiting classification and assignment to other federal institutions.

ty—a strip search of a person arrested for a non-misdemeanor traffic violation absent probable cause to believe the offender was concealing weapons or contraband on her body was enjoined in *Tinetti v. Wittke,* 479 *F.Supp.* 486 (1979). In that case a non-resident motorist charged with speeding and unable to post $40.00 bail was the subject of a strip search in accord with the written policy of the Racine, Wisconsin Sheriff's Office. In recognizing that a blanket policy of strip searching all detainees without regard to probable cause was violative of defendant's constitutional rights as embodied in the Fourth, Fifth and Fourteenth Amendments, the Court properly observed that a traffic offense usually does not involve a weapon. Nor does the offense itself provide a defendant reason to conceal or an officer reason to suspect the existence of any evidence which would be discovered through a strip search.

In *Delaware v. Prouse,* 440 *U.S.* 648, 659, 99 *S.Ct.* 1391, 1396, 59 *L.Ed.*2d 660, 667–8 (1979), a test less stringent than probable cause was adopted but adjudged to be reasonable since the facts upon which the intrusion was based were capable of measurement against an "objective standard." [3] In reviewing whether a particular act is unreasonable in terms of the Fourth Amendment, the Court stated:

> The permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests ...

 While law enforcement officers have a legitimate interest in uncovering weapons or contraband, that interest is not without boundaries. The mere fact that a person is validly arrested, as here, does not provide the arresting officer an

---

[3]There it was held that a policeman's stopping an automobile and detaining the driver in order to check the driver's license and the registration of the automobile constitute an unreasonable seizure under the Fourth and Fourteenth Amendments, except in those situations where there is at least a reasonable and articulable suspicion that a motorist is unlicensed, or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law.

invitation to a limitless search absent some justification beyond the mere inability to post bail. The pertinent words of the Fourth Amendment of the *United States Constitution* and *N.J.S.A. Const.* Art. 1, § 7:

> ... the right of the people to be secured in their persons ... against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon *probable cause* ... [Emphasis supplied.]

shall not be subverted to a police department detention policy that bears no reasonable or rational relationship to the initial objective sought—the posting of bail.

Here, the inability of the defendant to post bail was the reason for placing him in a detention cell and subjecting him to a strip search. Only after the removal of his pants was cocaine found. No probable cause existed for the strip search that was effectuated purely because of departmental policy. Less intrusive means were available to accomplish the same result of ascertaining the contents of defendant's pockets. It is of no significance, as the State argues, that had the contraband been found either during the initial pat down search or during a headquarters inventory search, it would be admissible as evidence. The truth of the matter is that the cocaine was not discovered during a pat down or an inventory search but during a strip search. Encouragement of this type of police conduct in failing to differentiate between detainees and the offenses for which they are charged through adoption of a blanket strip search policy cannot be judicially approved in a free society that passionately embraces the tenets of its constitution. In this case the balance between the promotion of legitimate governmental interests and the protection of an individual's Fourth Amendment rights perceptibly weighs in favor of the respect of personal rights. A strip search is a humiliating, degrading and embarrassing experience, and its indiscriminate use should not be judicially countenanced. Where no "objective standard" exists, as here, life should not be breathed into this intrusive policy. It is truly repugnant in concept and practice and merits disapproval.

An appropriate order suppressing the evidence shall be submitted by defendant's counsel.

DONALD LITT, PLAINTIFF, v. RUTHERFORD RENT BOARD AND JOHN PETTI, DEFENDANTS.

Superior Court of New Jersey
Law Division Bergen County

Decided July 12, 1984.

