NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3619-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RICKY BROWN,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

October 17, 2018

APPELLATE DIVISION

Argued September 12, 2018 – Decided October 17, 2018

Before Judges Messano, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 17-06-1207.

Christina M. Naughton argued the cause for appellant.

Dylan P. Thompson, Assistant Prosecutor, argued the cause for respondent (Damon G. Tyner, Atlantic County Prosecutor, attorney; Dylan P. Thompson, of counsel and on the briefs).

Steven A. Yomtov, Deputy Attorney General, argued the cause for amicus curiae Office of the Attorney General (Gurbir S. Grewal, Attorney General, attorney; Steven A. Yomtov, of counsel and on the brief).

Margaret R. McLane, Assistant Deputy Public Defender, argued the cause for amicus curiae Office of the Public Defender (Joseph E. Krakora, Public

Defender, attorney; Margaret R. McLane, of counsel and on the briefs).

Alexander R. Shalom argued the cause for amicus curiae American Civil Liberties Union Foundation (Alexander Shalom, of counsel and on the briefs; Edward L. Barocas and Jeanne M. LoCicero, on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

Among other issues, this appeal requires us to decide whether the strip search statute (the Statute), N.J.S.A. 2A:161A-1 to -10, applies to crimes. We granted defendant Ricky Brown's motion for leave to appeal from a January 31, 2018 trial court order, denying his motion to suppress evidence seized as a result of a strip search following his arrest for indictable drug offenses. After reviewing the record in light of the contentions advanced on appeal, we affirm.

I.

We derive the salient facts from the evidence adduced at the motion hearing. On April 5, 2017, Atlantic City Vice Detective Darrin Lorady conducted surveillance of defendant's residence based on "detailed information" Lorady had "fairly recently" received from a confidential informant (CI). According to the CI, defendant would drive from his house in Little Egg Harbor to the Fox Manor Hotel in Atlantic City, which Lorady described as "a very busy

2

place for vice detectives."  The CI claimed defendant would distribute narcotics to a particular individual at the hotel.  The CI provided Lorady with defendant's address in Little Egg Harbor and a description of defendant's vehicle, including the license plate number.  The CI also stated defendant "always has a gun."[1]

At approximately 10:30 a.m., defendant left his house and drove to a Walmart in town.  Aided in his surveillance by Detective Brian Hambrecht, Lorady followed defendant and observed him engage in a "hand-to-hand transaction" in the Walmart parking lot with the driver of another vehicle.  The detectives then followed defendant into Atlantic City, heading toward the Fox Manor Hotel.  As defendant approached the hotel, he began circling the block, which Lorady explained was a common maneuver "to lose a tail or . . . to see if people are following you."  Defendant, who Lorady believed had noticed the surveillance, then drove out of the city.

Based on their observations of the hand-to-hand transaction, the accuracy of the CI's information, and a tinted window infraction, detectives stopped defendant's vehicle on Route 40, described by Lorady as "a major highway."

---

[1] Lorady testified on direct examination that the CI told him defendant "occasionally [would] be in possession of a weapon[,]" but on cross-examination, defense counsel elicited testimony from Lorady that the CI said defendant "always has a gun" as documented in Lorady's report.

A-3619-17T1

Lorady asked defendant, who "was visibly shaking" and "seemed very upset[,]" to exit his vehicle. By that time, other officers had arrived, including a K-9 partner, who positively alerted for the presence of narcotics in defendant's vehicle.

During the K-9 sniff, defendant "became more nervous as time progressed" and continued reaching for a "distinct bulge" in his groin, "adjust[ing] it slightly." Believing defendant "possibly was adjusting a weapon," Lorady attempted to perform "a protective pat down for [his] safety." Defendant "pulled away" stating, "you can't touch me there." Lorady "couldn't successfully complete the pat down[,] but [he] was able to feel that there was something . . . hard" in defendant's groin, in an area that commonly is utilized to conceal weapons.

The officers then handcuffed defendant and transported him to the police station where Lorady obtained permission from his supervisor to conduct a warrantless strip search of defendant. The strip search was conducted at noon, in a private interview room, and resulted in the seizure of five bricks of heroin from defendant's groin "right where [Lorady] had felt [it]."

Following his arrest, defendant was charged in an Atlantic County indictment with third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1)

(count one), and second-degree possession of heroin with the intent to distribute, N.J.S.A. 2C:35-5(b)(2) (count two). Defendant moved to suppress the evidence seized from his person as a violation of the Statute. The trial judge denied the motion, finding the Statute did not apply because defendant was under arrest for a crime at the time of the search. Further, the judge determined the warrantless search was valid because the officers had probable cause to arrest defendant, and exigent circumstances existed because the officers believed defendant had a weapon concealed in his groin area.

On appeal, defendant contends the trial court erred in denying his motion because the Attorney General Guidelines (Guidelines),[2] issued pursuant to N.J.S.A. 2A:161A-8, extend the protections of the Statute to individuals detained or arrested for crimes, and the police violated the Guidelines. The State counters the search was justified by probable cause and reasonable exigent circumstances.

During the course of the briefing on appeal, we invited and received amicus curiae briefs from the New Jersey Office of the Attorney General, and

---

[2] New Jersey Office of the Attorney General, Attorney General's Strip Search and Body Cavity Search Requirements and Procedures for Police Officers (July 1995), http://www.state.nj.us/lps/dcj/agguide/3strpsch.pdf.

the Office of the Public Defender. We also granted a motion of the American Civil Liberties Union of New Jersey (ACLU) to appear as amicus curiae.

Although not contending the Statute applies to crimes, the Public Defender and ACLU claim the Guidelines delineate the objectively reasonable circumstances that justify a strip search. They contend here that defendant's constitutional rights were violated because there was no exigency justifying the warrantless strip search. The Attorney General claims the Guidelines were neither intended to nor did they extend the Statute to defendants detained upon reasonable suspicion or arrested on probable cause of committing a crime, but even if the Guidelines apply, the search passed constitutional muster.

## II.

Our review of a trial judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). "An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We do so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court

cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference, however, to conclusions of law made by trial courts in deciding suppression motions, which we instead review de novo. State v. Watts, 223 N.J. 503, 516 (2015).

A.

Evidence seized as a result of a strip search conducted in violation of N.J.S.A. 2A:161A-1 is subject to suppression. State v. Harris, 384 N.J. Super. 29, 49-51 (App. Div. 2006); State v. Hayes, 327 N.J. Super. 373, 385 (App. Div. 2000). Indeed, the Statute provides "greater protection than is afforded by the Fourth Amendment." Id. at 381. Originally adopted in 1985 to establish statutory guidelines for acceptable parameters of a strip search, the Statute presumably was enacted in response to State v. Sheppard, 196 N.J. Super. 448, 455 (Law. Div. 1984), a trial court decision invalidating a police department's policy of strip searching all detainees. See L. 1985, c. 70; Hayes, 327 N.J. Super. at 381.

We, therefore, begin our analysis with a de novo review of the trial court's initial determination that the protections of the Statute do not apply here. In doing so, we consider the plain language of the Statute. See State v. Brannon,

178 N.J. 500, 505-06 (2004); State v. Thomas, 166 N.J. 560, 567 (2000); State v. Butler, 89 N.J. 220, 226 (2006) (recognizing the well-settled rule of statutory construction that courts "look first to the language of the statute").  Thus, "If the statute is clear and unambiguous on its face and admits of only one interpretation, [courts] need delve no deeper than the act's literal terms to divine the Legislature's intent."  Butler, 89 N.J. at 226.

Pursuant to the Statute:

> A person who has been detained or arrested for commission of an offense other than a crime shall not be subjected to a strip search unless:
>
> a.  The search is authorized by a warrant or consent;
>
> b.  The search is based on probable cause that a weapon, controlled dangerous substance, . . . or evidence of a crime will be found and a recognized exception to the warrant requirement exists; or
>
> c.  The person is lawfully confined in a municipal detention facility or an adult county correctional facility and the search is based on a reasonable suspicion that a weapon, controlled dangerous substance, . . . or contraband, as defined by the Department of Corrections, will be found, and the search is authorized pursuant to regulations promulgated by the Commissioner of the Department of Corrections.
>
> [N.J.S.A. 2A:161A-1 (emphasis added).]

Clearly, as the motion judge recognized, the plain language of N.J.S.A. 2A:161A-1 limits its application to non-indictable offenses. Indeed, none of the parties or amici contend otherwise.

At issue, however, is whether the Guidelines extend the protections of the Statute where, as here, a suspect is arrested based on probable cause of having committed an indictable offense.[3] In deciding this issue, we review the Guidelines in conjunction with the legislative history of the Statute to give context to its breadth and application.

On February 3, 1993, the Director of the Division of Criminal Justice issued a memorandum to all county prosecutors pertaining to the Guidelines with the following prefatory statement (emphasis added):

> Enclosed for dissemination to all county and local law enforcement agencies within your jurisdiction are the Attorney General's Strip Search and Body Cavity Search Requirements and Procedures for Police Officers. These guidelines are being promulgated pursuant to N.J.S.A. 2A:161A-8b, which authorizes the Attorney General to issue guidelines governing the performance of strip and body cavity searches, as well as guidelines for the release and confinement of persons arrested for offenses other than crimes. While the [S]tatute addresses non-indictable offenses, the Attorney General's guidelines cover strip search and body cavity search procedures for crimes as well.

---

[3] Although the motion judge recognized defendant's argument that the Guidelines applied here, she did not expressly rule on their applicability.

Because the Guidelines apply to crimes and non-indictable offenses, they deviate from the explicit provisions of the statutory mandate pursuant to N.J.S.A. 2A:161A-8(b). The Guidelines also "establish more exacting requirements for a strip search than those established by N.J.S.A. 2A:161A-1." State v. Evans, 449 N.J. Super. 66, 88 (App. Div. 2017), rev'd on other grounds, ___ N.J. ___ (2018). For example, where a suspect is arrested without custodial confinement, "N.J.S.A. 2A:161A-1(b) would permit a strip search upon a finding of probable cause and a recognized exception to the warrant requirement, [whereas] the Attorney General Guidelines [Section II(A)(1)(a)] completely eliminate subsection (b) as a basis for permitting a strip search in the absence of exigent circumstances." Id. at 89.

Preliminarily, we have recognized, "As the chief law enforcement officer of this State, the Attorney General is authorized to provide for 'uniform and efficient enforcement of the criminal law and the administration of criminal justice throughout the State,' N.J.S.A. 52:17B-98, and explicitly authorized to issue guidelines applicable to [a strip search conducted on a person arrested for commission of an offense other than a crime,] N.J.S.A. 2A:161A-8(b)." Id. at 87-88. "The Guidelines are 'binding and enforceable on local law enforcement

agencies.'" Id. at 88 (quoting O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 383 (App. Div. 2009)).

In O'Shea, we reiterated that "consistent with [N.J.S.A. 52:17B-98], the [Attorney General] issues guidelines, directives and policies concerning appropriate application of the State's criminal laws." 410 N.J. Super. at 383. Further, "Our Supreme Court has acknowledged the validity of various guidelines issued by the Attorney General." In re Carroll, 339 N.J. Super. 429, 439 (App. Div. 2001). These guidelines pertain to plea offers, sex offender registration, drug screening and drug testing. Id. at 439-40. But see State v. Henderson, 208 N.J. 208, 278 (2011) (recognizing that the Attorney General's guidelines for preparing and conducting identification procedures were a series of "recommended best practices").

When the Statute initially was enacted, there was no provision empowering the Attorney General to promulgate regulations or to issue guidelines governing the performance of strip searches. Rather, N.J.S.A. 2A:161A-8 (prior to amendment) provided, in pertinent part:

> Nothing in this act shall prohibit a strip search or body cavity search of a person unable to post bail after a reasonable opportunity to do so, who is lodged by court order or pursuant to an arrest authorized by law, in a lockup, detention facility, prison, jail or penal institution. The Administrative Office of the Courts

shall promulgate a bail schedule for all offenses, other than crimes, and bail may be fixed and accepted by the law enforcement officer in charge of the station house.

The Legislature explained that "[t]he provisions of this bill are not to apply to any search of a person who is lodged by court order or to a person arrested and authorized by law to be in a lockup, detention facility, prison, jail or penal institution." A. Comm. Statement to A. 701 (March 5, 1984).

Thereafter, in Ernst v. Borough of Fort Lee, 739 F. Supp. 220, 225 (D.N.J. 1990), the District Court held that the provisions of the Fort Lee Police Department Operations Manual, and N.J.S.A. 2A:161A-8 (prior to amendment) upon which it was based, did "not pass muster under the Constitution to the extent that they permit the indiscriminate strip search of an arrestee on a minor offense without requiring a reasonable suspicion that the arrestee is concealing a weapon or harboring contraband or drugs." Courts also found that mandatory policies requiring a strip search of every arrestee, regardless of the offense charged, were unconstitutional. See O'Brien v. Borough of Woodbury Heights, 679 F. Supp. 429, 433-34 (D.N.J. 1988); Davis v. City of Camden, 657 F. Supp. 396, 400 (D.N.J. 1987). See also State v. Sheppard, 196 N.J. Super. at 455 (strip searches cannot be routinely performed on defendants charged with non-criminal offenses who have not yet posted bail).

As a result, in 1991, the Legislature amended the Statute to its present form. N.J.S.A. 2A:161A-8, as amended, now provides, in pertinent part:

> a. The Commissioner of the Department of Corrections, after consultation with the Attorney General, pursuant to authority granted in sections 6 and 10 of P.L.1976, c. 98 (C. 30:1B-6 and 30:1B-10) and this section shall promulgate regulations governing strip and body cavity searches of persons detained in municipal detention or adult county correctional facilities. These regulations shall give full recognition to the rights of persons confined granted under the constitutions of the United States and this State.
>
> b. The Attorney General shall issue guidelines or directives for police officers governing the release and confinement of persons who have been arrested for commission of an offense other than a crime and such guidelines governing the performance of strip and body cavity searches as he deems necessary to promote compliance with this act, the regulations promulgated by the Commissioner of the Department of Corrections, and with the constitutions of the United States and this State. The Attorney General may require law enforcement agencies to submit periodic reports providing data on all strip searches and body cavity searches conducted.

The Legislature explained that the Statute

> authorizes the Department of Corrections, in consultation with the Attorney General, to promulgate regulations governing strip and body cavity searches. The Attorney General is also authorized to issue directives to police officers governing the performance of strip and body cavity searches.

13

[S. Judiciary Comm. Statement to A. 1182 (May 13, 1991) (emphasis added).]

Pertinent to this appeal, the Legislature empowered the Attorney General to issue regulations and directives concerning how a strip search is performed, i.e., basic procedures for privacy and sanitary conditions.[4]  Absent from the Statute or legislative history, however, is any provision authorizing the Attorney General to extend the same search requirements to individuals who are detained or arrested for crimes.  In that respect, the Guidelines are not statutorily authorized or otherwise a rational implementation of the Attorney General's delegated power pursuant to N.J.S.A. 2A:161A-8(b).[5]  We, therefore, reject the

---

[4] The Guidelines specifically provide that strip searches "[i]n custodial confinement [are to be] conducted in accordance with Department of Corrections regulations."  In turn, the regulations adopted by the Department of Corrections pursuant to N.J.S.A. 2A:161A-8(a), governing strip searches of individuals detained in municipal detention or adult correctional facilities, are different for individuals detained for the commission of an offense other than a crime, N.J.A.C. 10A:34-3.4 and N.J.A.C. 10A:31-8.4, than for persons lawfully confined for the commission of a crime, N.J.A.C. 10A:34-3.5 and N.J.A.C. 10A:31-8.5.

[5] The Attorney General's amicus brief candidly concedes that because the Guidelines, which were last revised in 1995, "are well over two decades old and do not incorporate case law decided during that time span, [they] will need to be revised and updated accordingly."  In addition, we urge that any revised Guidelines comply with the statutory authority set forth in N.J.S.A. 2A:161A-1 to -10.

arguments of defendant, and those presented in a more nuanced version by the Public Defender and ACLU. Neither the legislative history nor the plain terms of the Statute authorized the Attorney General to promulgate Guidelines that extend the "more exacting requirements for a strip search than [even] those established by N.J.S.A. 2A:161A-1" to those detained or arrested for crimes. Evans, 449 N.J. Super. at 88.

B.

We next turn to defendant's constitutional challenge, focusing on whether exigent circumstances existed to justify the warrantless strip search.[6] In particular, defendant challenges the trial court's determination that his actions in resisting the pat-down search at the side of the highway created exigent circumstances justifying the warrantless strip search at the police station.

The Fourth Amendment of the United States Constitution, and Article I, Paragraph 7 of the New Jersey Constitution, "protect citizens against unreasonable police searches and seizures by requiring warrants issued upon probable cause." State v. Rodriguez, 172 N.J. 117, 125 (2002). Warrantless searches and seizures are "presumptively invalid." State v. Pineiro, 181 N.J. 13,

---

[6] Defendant does not challenge the motion judge's determination that the police had "[p]robable cause to believe the evidence of a crime would be found."

19 (2004). When the State does not seek a warrant, the State bears the burden to demonstrate the search "falls within one of the few well-delineated exceptions to the warrant requirement." Rodriguez, 172 N.J. at 125 (quoting State v. Maryland, 167 N.J. 471, 482 (2001)).

Our Supreme Court has recognized the exigent circumstances doctrine as one exception to the warrant requirement. State v. Cassidy, 179 N.J. 150, 160 (2004) abrogated on other grounds by State v. Edmonds, 211 N.J. 117 (2012). Proof of both exigent circumstances and probable cause "may excuse police from compliance with the warrant requirement." State v. Walker, 213 N.J. 281, 289 (2013) (quoting State v. Bolte, 115 N.J. 579, 585-86 (1989)).

The focus of the exigent circumstances inquiry is whether the police conduct was objectively reasonable under the totality of the circumstances. State v. DeLuca, 168 N.J. 626, 634 (2001). "Generally stated, circumstances are exigent when they 'preclude expenditure of the time necessary to obtain a warrant because of a probability that the suspect or the object of the search will disappear, or both.'" Id. at 632. "[T]he term 'exigent circumstances' . . . is incapable of precise definition because, by its nature, the term takes on form and shape depending on the facts of any given case." Ibid. Accordingly, "the

A-3619-17T1

application of the doctrine of exigent circumstances demands a fact-sensitive, objective analysis." Ibid.

Courts consider various factors in assessing exigency. Ibid. The following factors are relevant to our inquiry in this case: "the degree of urgency involved and the amount of time necessary to obtain a warrant"; "the possibility of danger to police officers guarding the site of contraband while a search warrant is sought"; "the gravity of the offense involved"; "the possibility that the suspect is armed"; and "the strength or weakness of the facts establishing probable cause[.]" State v. DeLuca, 325 N.J. Super. 376, 391 (App. Div. 1999), aff'd as modified, 168 N.J. 626 (2001).

Having considered the totality of the circumstances as they unfolded after Detective Lorady stopped defendant's vehicle, we are satisfied exigent circumstances existed to justify the warrantless strip search. Specifically, following the K-9 dog's detection of narcotics in defendant's vehicle, his nervous demeanor and evasive actions while Lorady attempted to perform a protective pat down,[7] heightened the officer's suspicions that defendant "possibly was

---

[7] Following oral argument, with our permission, the State and the Public Defender filed supplemental briefs addressing State v. Evans, ____ N.J. ____ (2018), which was decided by the Supreme Court after the initial briefs were filed. The Court in Evans applied the plain feel exception to the Statute,

A-3619-17T1

adjusting a weapon" in his groin area.  Although defendant prevented Lorady from completing the pat down at the side of a busy highway, Lorady felt a hard object and was cognizant of the CI's information that defendant was "known to be armed during the course of these narcotics investigations and the fact that so far the information that was provided to [Lorady] all added up."

Moreover, having lawfully arrested defendant, Lorady had "the right and duty to search him for weapons and contraband before placing him in a patrol car." State v. Gibson, 218 N.J. 277, 299 (2014).  "It also follows that the police have the authority to ensure, at headquarters, that a person under arrest is not armed with a weapon."  Ibid.

Nonetheless, defendant argues there was no exigency here to justify the strip search because he could have remained handcuffed and under police surveillance while the officers applied for a warrant to strip search him.  That position fails to appreciate the potential danger to the officer charged with

---

recognizing "'tactile discoveries of contraband' may justify a warrantless search . . . if the officer 'feels an object whose contour or mass makes its identity immediately apparent.'"  Id. at ___ (slip op. at 17-19) (citing Minnesota v. Dickerson, 508 U.S. 366, 375 (1993)).  Because we find defendant's conduct prevented the officer from completing the pat down, here, we need not reach the plain feel exception to the search warrant requirement recently approved by the Court.

guarding defendant in some area of the police station, or to other prisoners or members of the public at large. Rather, as the Office of the Attorney General noted in its amicus brief, had the officers applied for a warrant, defendant "most likely [would] have [been] placed in a holding cell at the police station, thereby triggering . . . the detention provision of the . . . [S]tatute." See N.J.S.A. 2A:161A-1(c). We agree that under those circumstances, it was untenable to delay the search to obtain a warrant.

In sum, defendant's actions in resisting the pat-down search created exigent circumstances justifying the warrantless strip search, and it was not reasonable to expect the officers to apply for a search warrant. Because Lorady believed defendant was concealing a weapon, the officer reasonably removed defendant from the side of a busy highway to the police station, and obtained his supervisor's permission to conduct a strip search in accordance with accepted procedures. We therefore conclude that the motion record supports the judge's conclusion that exigent circumstances properly justified the warrantless strip search.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3619-17T1