**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3954-18T3

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

DANIEL T. KATZ,

     Defendant-Respondent.

_____

Submitted October 17, 2019 – Decided  November 13, 2019

Before Judges Gooden Brown and Mawla.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 18-06-0790.

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for appellant (Carey J. Huff, Assistant Prosecutor, of counsel and on the briefs).

The Law Offices of Jonathan F. Marshall, and Helmer Conley & Kasselman, PA, attorneys for respondent (James Fagen and Patricia B. Quelch, of counsel and on the brief).

PER CURIAM

By leave granted, the State appeals from the April 2, 2019 Law Division order granting defendant's motion to suppress evidence seized from his vehicle during a warrantless search following a motor vehicle stop. We affirm.

A Monmouth County grand jury returned a two-count indictment against defendant, charging him with fourth-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(3); and first-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(10)(a). Defendant moved to suppress the CDS that formed the evidential basis for the charges. At the suppression hearing conducted on March 12, 2019, the following testimony was elicited from the two uniformed police officers involved in the encounter, Patrick Brady and Devin Corso.

On August 8, 2017, the officers were working together in Wall Township in a marked patrol vehicle driven by Corso. Brady, who had "[a]pproximately seven years" of experience as a "patrolman" in Wall Township, and an additional two years of similar law enforcement experience in New Hampshire, was training Corso, who had recently completed his basic training at the Police Academy and was "a month and a half" into "[his] field training." At approximately 1:40 a.m., near the corner of Marconi Road and Monmouth Boulevard, the officers observed a green 2001 Acura with "[t]he middle brake

light . . . out on the vehicle[,]" in contravention of N.J.S.A. 39:3-66, requiring that lamps be maintained in good working order. They subsequently conducted a motor vehicle stop on Belmar Boulevard, activating the mobile video recorder (MVR).[1]

As they approached the vehicle on the passenger side, the officers observed one occupant, the driver, later identified as defendant. Corso questioned defendant about his earlier activities, his intended destination, and his driving and arrest history. Defendant responded he was on his way home from his uncle's house, he had "like two points on [his license,]" and he had previously been arrested for "[p]ot." Upon obtaining defendant's driving credentials, Corso returned to the patrol car with Brady to verify defendant's credentials. While walking back to the patrol car, Brady said to Corso, "can you smell that," referring to an odor of raw marijuana "coming from somewhere inside [defendant's] vehicle." Brady told Corso he could also detect the odor of "Black and [M]ild" cigars inside the vehicle. Brady described a Black and Mild cigar as "a little cheap cigar[,]" used "to inhale marijuana" or to "try to mask"

---

[1] Brady testified the MVR "records audio and visual," and the microphone connected to the MVR was attached to Corso's lapel. Brady explained that the MVR also captures thirty seconds of video before the patrol car's emergency lights are engaged. The MVR was played at the hearing during Brady's testimony.

the smell of marijuana. Additionally, while looking inside defendant's vehicle, the officers observed "a[n] electronic vape pen," generally used "for nicotine" or "to ingest marijuana."

Brady testified the presence of the Black and Mild cigar and the vape pen, in conjunction with the odor of marijuana, suggested to him that "the vape pen was being used to ingest marijuana." Brady explained "[u]sually[,] if someone[ is] using tobacco, either a cigar or a cigarette, they're not going to use a vape pen to ingest nicotine because they're already smoking a cigar or a cigarette." Brady testified he had "seized marijuana" approximately one hundred times and was "familiar with [how] marijuana smell[ed]," in that it had "a distinct odor." He clarified that he detected the odor of marijuana emanating from defendant's "whole vehicle," including its trunk. On the other hand, Corso "thought" he smelled "a little" odor of raw marijuana while standing at defendant's passenger side window, but could not "tell where [the smell] was coming from before it made it to the window." Corso, like Brady, had been "taught the smell of marijuana" while training at the Police Academy.

A database search of defendant's credentials revealed defendant had previously been charged with drug possession and distribution as well as burglary. Corso then asked defendant to step out of the vehicle, and defendant

complied. Corso said to defendant, "[a]ll right, so here's the deal – I'm getting the odor of marijuana coming from your car." Defendant replied there was "definitely" no odor of marijuana in his vehicle, and refused to consent to a search of his vehicle. Corso then proceeded to search the passenger compartment of defendant's vehicle over defendant's objection. During the search, Corso found no marijuana in the passenger compartment, but the "electronic vape pen" contained remnants of oil in the cartridge. Because Corso did not find the "raw marijuana" he "had smelled" in "the passenger[] compartment of the vehicle[,]" he continued to search the trunk. Upon opening the trunk, Corso discovered THC[2] gummy candies in sealed packages, sealed mason jars containing raw marijuana, and a latched Yeti brand cooler. According to Brady, there was no odor of marijuana emanating from the sealed packages found beside the cooler to justify defendant's apparent "nervous[ness]."

Corso then proceeded to open the cooler and found more packages of THC gummy candies, more mason jars of raw marijuana, and multiple vacuumed sealed bags of raw marijuana. According to Corso, "the smell [of marijuana]

_____

[2] THC or delta-9-tetrahydrocannabinol is "the main ingredient that produces the psychoactive effect" in marijuana. Marijuana, DEA (Oct. 7, 2019, 2:13 PM), https://www.dea.gov/factsheets/marijuana.

was stronger when [he] opened [the cooler.]"  After discovering the contraband, defendant was placed under arrest.  The logged evidence recovered from defendant's vehicle included (1) sealed mason jars filled with raw marijuana; (2) small bags of raw marijuana; (3) large vacuum sealed bags of raw marijuana; (4) loose marijuana in the cooler; (5) packages of THC gummy candies; (6) packages of THC chocolates; (7) THC oil in a jar; (8) THC vape pen cartridges; and (9) at least $1000 in cash.

Following the hearing, on April 2, 2019, the judge entered an order granting "[d]efendant's [m]otion to [s]uppress all evidence found in [defendant's] vehicle."  In an accompanying written opinion, the judge determined that while "the vehicle stop was proper, the officers lacked probable cause to search [defendant's] vehicle, including its trunk[.]"  As to the initial stop, the judge explained that because "the video recording showed evidence that [defendant's] center brake lights were malfunctioning as he drove toward Belmar Boulevard, the officers possessed reasonable suspicion that [defendant] committed a motor vehicle offense," justifying the motor vehicle stop.[3]

---

[3]  Defendant challenges the initial stop as unlawful, arguing it constituted a pretext, "when considered in conjunction with [the] Wall Township Police Department's quota system."  Defendant asserts "the [motion judge]'s finding is contrary to State v. Sutherland, 231 N.J. 429, 445 (2018), wherein the Court

(continued)

A-3954-18T3

Turning to the warrantless search of the vehicle, the judge determined the "officers' suspicion that [defendant] possessed CDS in his vehicle's interior and trunk did not rise to the level of probable cause" for three reasons:

> First, due to the alleged smell of marijuana, Black & Mild cigars, and the vape-pen near the front passenger's seat, the officers possessed independent reasonable suspicion to extend the time of the vehicle stop and look into [defendant's] driver's license information and criminal history. However, under the second prong of the analysis, the initial search of the vehicle's front, passenger, and back seats were impermissible under Officer Brady's erroneous application of the "plain smell" doctrine. Lastly, even if the [c]ourt were to hypothetically treat the search of the vehicle's interior as constitutionally proper, the [c]ourt finds that Officer Corso lacked probable cause to believe that additional contraband would be found within [defendant's] trunk.

Focusing first on the probable cause required "under the 'plain smell' doctrine to believe that marijuana could be found within the vehicle[,]" the judge elaborated:

---

found a stop based upon a similar misinterpretation of N.J.S.A. 39:3-66 to be invalid and suppressed all evidence seized." However, defendant did not file a cross-motion for leave to appeal on that issue. "Without cross-appealing, a party may argue points the trial court either rejected or did not address, so long as those arguments are in support of the trial court's order." State v. Eldakroury, 439 N.J. Super. 304, 307 n.2 (App. Div. 2015). Here, the motion judge explicitly rejected defendant's challenge to the motor vehicle stop. Nonetheless, we decline to address the argument in the absence of a cross-appeal because we do not deem the argument to be "in support of the trial court's order." Ibid.

Although Officer Brady was capable of distinguishing between the odors of burned and raw marijuana due to his experience as a law enforcement officer and allegedly detected the odor of marijuana immediately upon approaching the passenger's side, . . . Officers Brady and Corso could not verify whether the discovered odor near the passenger's seat was that of marijuana; thus, the officers' reasonable suspicion that [defendant] possessed marijuana did not elevate to the probable cause needed to justify the officers' warrantless search of the vehicle. The officers could not find any remnants of marijuana near the passenger's side of the vehicle. Although Officer Brady testified that [defendant's] vape-pen near the passenger's seat could have been used to ingest marijuana, the testimony has not eliminated the reasonable possibility that [defendant] could have used the vape-pen to instead ingest nicotine. To support his point that [defendant] allegedly used the vape-pen to ingest marijuana, Officer Brady claimed that the vape-pen cartridges contained hashish oil, but the State never introduced the laboratory-tested vape-pen into evidence to confirm the Officer's sense of smell. Furthermore, the alleged odor of marijuana could have reasonably been the burnt odor of the Black & Mild[] cigars, which also function to mask the smell of [marijuana]. Taking all the factual circumstances into consideration, the [c]ourt finds that Officers Brady and Corso at most had reasonable suspicion of [defendant's] CDS possession, not probable cause.

Furthermore, "even assuming . . . the officers had probable cause to search the interior of the vehicle under the 'plain smell' doctrine," the judge did "not find the officers' testimony that the odor of marijuana extended the scope of the vehicle search to the trunk believable." Expressly rejecting Brady's testimony,

the judge stated he could not "solely rely on Officer Brady's say-so as to whether the odor in the vehicle was allegedly that of marijuana."[4] The judge also rejected Corso's claims based on his "lack of experience in detecting marijuana odors and the high unlikelihood that [he] detected any smell of marijuana arising from the trunk[,]" considering "the secured location of the marijuana."

The judge explained:

> Officer Corso, a new law enforcement officer with very limited on-the-road experience, solely executed the search of the front and back portions of [defendant's] vehicle without Officer Brady's assistance. Due to Officer Corso's lack of experience, his ability to distinguish between the odors of different types of CDS was not as refined as Officer Brady's experienced sense of smell. Additionally, . . . [Officer Corso] responded to Officer Brady's concern about the odor of raw marijuana by noting that he "thought" he smelled a "little bit" of the CDS. The language suggests some level of uncertainty as to whether marijuana could be found at all in the vehicle . . . .
>
> Furthermore, . . . . [e]ven if Officer Corso determined that a "little bit" of the marijuana odor arose from the vape-pens and the discarded cigars near the

---

[4] During the hearing, when Brady was given one of the large vacuum sealed bags of raw marijuana, contained inside a marked evidence bag, he agreed that it "still smell[ed] like marijuana through both bags" despite "a year and a half of drying out." He explained, however, that "the smell was stronger" when they first discovered the marijuana in the trunk of defendant's car. In juxtaposition to this testimony, the parties stipulated that "[w]hen [the] testimony was completed, the judge came off the bench, picked up the bags of marijuana, brought them to his nose and smelled them."

front passenger's seat, the existence of a small amount of marijuana near the front passenger's seat is insufficient evidence of probable cause to search the trunk of the vehicle. . . . In addition, the [c]ourt does not understand how Officer Corso was able to trace the alleged odor of marijuana to the trunk of the vehicle [because] . . . . most of the CDS products . . . were wrapped, vacuum-sealed, and stored in a secure, high-end, and latched cooler. . . . According to the officers' testimonies, the only CDS products that could have been found outside of the cooler were gummy candies, which emitted no odor, and a small mason jar, which was firmly sealed. Due to the multiple barriers surrounding the seized marijuana, the [c]ourt finds incredulous that Officer Corso was able to sense the marijuana in the trunk.

Concluding the officers "lacked probable cause to believe that evidence of marijuana would be found in both the interior and trunk of [defendant's] vehicle[,]" and "impermissibly extended the scope of the search to the trunk of the vehicle[,]" the judge granted defendant's suppression motion, and this appeal followed.

On appeal, the State argues "[t]he trial court erred in concluding . . . it could not rely solely upon Officer Brady's smelling of marijuana to support probable cause to search the vehicle." The State "submits the trial court's conclusions that further actions were needed are in error because the smell of raw marijuana alone was sufficient to provide probable cause." The State continues "[t]he probable cause was further augmented by the time of day . . .

10                                                    A-3954-18T3

and defendant's prior arrests for possession and distribution, which the officers knew about before the search."

Our review of the trial court's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). "An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We do so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" Robinson, 200 N.J. at 15 (alteration in original) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). "We owe no deference, however, to conclusions of law made by trial courts in deciding suppression motions, which we instead review de novo." State v. Brown, 456 N.J. Super. 352, 358-59 (App. Div. 2018) (citing State v. Watts, 223 N.J. 503, 516 (2015)).

11

Applying that de novo standard of review to the trial court's legal conclusions, "[w]e review this appeal in accordance with familiar principles of constitutional law." State v. Robinson, 228 N.J. 529, 543 (2017). "Both the United States Constitution and the New Jersey Constitution guarantee an individual's right to be secure against unreasonable searches or seizures." State v. Minitee, 210 N.J. 307, 318 (2012) (citing U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7). Thus, searches and seizures conducted without a warrant "are presumptively invalid as contrary to the United States and the New Jersey Constitutions." State v. Pineiro, 181 N.J. 13, 19 (2004) (citing State v. Patino, 83 N.J. 1, 7 (1980)). As such, "the State must demonstrate by a preponderance of the evidence[,]" id. at 20 (quoting State v. Wilson, 178 N.J. 7, 13 (2003)), that "[the search] falls within one of the few well-delineated exceptions to the warrant requirement." Id. at 19-20 (quoting State v. Maryland, 167 N.J. 471, 482 (2001) (alteration in original)). "Thus, we evaluate the evidence presented at the suppression hearing in light of the trial court's findings of fact to determine whether the State met its burden." Id. at 20.

The exception invoked in this case to justify the warrantless search is the automobile exception to the warrant requirement. Pursuant to State v. Witt, 223 N.J. 409 (2015), officers may now conduct a warrantless, nonconsensual search

12

during a lawful roadside stop "in situations where: (1) the police have probable cause to believe the vehicle contains evidence of a criminal offense; and (2) the circumstances giving rise to probable cause are unforeseeable and spontaneous." State v. Rodriguez, 459 N.J. Super. 13, 22 (App. Div. 2019) (citing Witt, 223 N.J. at 447-48). "New Jersey courts have [long] recognized that the smell of marijuana itself constitutes probable cause that a criminal offense ha[s] been committed and that additional contraband might be present." State v. Walker, 213 N.J. 281, 290 (2013) (quoting State v. Nishina, 175 N.J. 502, 515-16 (2003)) (internal quotation marks omitted); accord, e.g., State v. Pena-Flores, 198 N.J. 6, 30 (2009); State v. Birkenmeier, 185 N.J. 552, 563 (2006); State v. Guerra, 93 N.J. 146, 150-51 (1983); State v. Legette, 441 N.J. Super. 1, 15 (App. Div. 2015); State v. Myers, 442 N.J. Super. 287, 295-96 (App. Div. 2015);[5] State v. Chapman, 332 N.J. Super. 452, 471 (App. Div. 2000); State v. Vanderveer, 285 N.J. Super. 475, 479 (App. Div. 1995); State v. Judge, 275 N.J. Super. 194, 201 (App. Div. 1994); State v. Sarto, 195 N.J. Super. 565, 574 (App. Div. 1984); State v. Kahlon, 172 N.J. Super. 331, 338 (App. Div. 1980).

---

[5] "[A]bsent evidence the person suspected of possessing or using marijuana has a registry identification card, detection of marijuana by the sense of smell, or by the other senses, provides probable cause to believe that the crime of unlawful possession of marijuana has been committed." Myers, 442 N.J. Super. at 303.

These and other decisions have "'repeatedly recognized that' . . . the detection of that smell satisfies the probable-cause requirement." Walker, 213 N.J. at 287-88 & n.1. Thus, in the context of a warrantless automobile search, the "smell of marijuana emanating from the automobile [gives] the officer probable cause to believe that it contain[s] contraband." Pena-Flores, 198 N.J. at 30 (citation omitted). However, "[a] police officer must not only have probable cause to believe that the vehicle is carrying contraband but the search must be reasonable in scope." Patino, 83 N.J. at 10. In that regard, "[i]t is widely recognized that a search, although validly initiated, may become unreasonable because of its intolerable intensity and scope." Id. at 10-11 (citing Terry v. Ohio, 392 U.S. 1, 19 (1968)). Thus, "the scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." Terry, 392 U.S. at 19 (quoting Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 310 (1967) (Fortas, J., concurring)).

Here, the motion judge expressly found that even assuming "the officers had probable cause to search the interior of the vehicle under the 'plain smell' doctrine," the judge did not believe the officers' testimony that the odor of marijuana extended to the trunk of the vehicle. We "must give deference to the trial court's credibility findings[,]" Walker, 213 N.J. at 290, particularly since

14

those findings are supported by sufficient credible evidence in the record. Notably, Brady testified that before Corso opened the cooler, there was no odor of marijuana emanating from the sealed packages found inside the trunk next to the cooler to justify defendant's apparent "nervous[ness]." This testimony contradicted Brady's earlier testimony that upon initially approaching the passenger side of defendant's vehicle, he had detected the odor of marijuana emanating from the "whole vehicle," including the trunk. Further, Corso testified that when he first approached the passenger side of defendant's vehicle, he "thought" he smelled "a little" odor of raw marijuana but the odor "was stronger when [he] opened [the cooler.]"

Contrary to the State's assertion, these facts are distinguishable from the facts in Kahlon. There, after conducting a motor vehicle stop and detecting the odor of "burning marijuana" when the "defendant opened his window to exhibit his [driving] credentials[,]" the defendant ultimately admitted to the officer he had been "smoking marijuana." Kahlon, 172 N.J. Super. at 336. A subsequent search of the interior of the vehicle uncovered "a half-burned marijuana cigarette[,]" "a clear plastic bag filled with . . . approximately [one-half] ounce of marijuana and a package of cigarette wrapping papers." Ibid. When the officer continued to search the back seat where a passenger had been seated, "he

noticed the very heavy odor of unburned marijuana," but found "no potential marijuana containers." Id. at 337. We held that the officer's "inability to pinpoint the source" of the odor emanating "from the rear of the [defendant's] vehicle, together with the marijuana already found in the car," established probable cause to extend the search to the trunk of the car, where he discovered approximately thirty pounds of marijuana in a torn plastic bag located inside a partially opened cardboard box. Id. at 338.

Here, because "[n]othing found in the interior of the passenger area or in the conduct of [defendant] generated any suspicion of a drug cache in the trunk[,]" the "search was purely investigatory and the seizure a product of luck and hunch, a combination of insufficient constitutional ingredients." Patino, 83 N.J. at 12 (citation omitted). "[T]he State bears a heavy burden of demonstrating the probable cause which justifies the search." Id. at 13. Here, given the judge's credibility findings, the State failed to satisfy its heavy burden to demonstrate that there was a reasonable basis to extend the search to the trunk of defendant's vehicle.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3954-18T3