# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0624-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J. P. M-S.,[1]

     Defendant-Appellant.

_____

Submitted May 20, 2020 – Decided June 19, 2020

Before Judges Haas and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-03-0178.

Joseph E. Krakora, Public Defender, attorney for appellant (John Walter Douard, Assistant Deputy Public Defender, of counsel and on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Milton Samuel Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials to protect the privacy of the victim. R. 1:38-3(c)(12).

PER CURIAM

Defendant J.P.M-S. appeals from the November 15, 2016 order denying his suppression motion, as well as the April 5, 2017 denial of his motion to reconsider that suppression ruling. We affirm, substantially for the reasons set forth in Judge John M. Deitch's cogent and thoughtful written opinions.

On August 15, 2015, defendant's wife reported to police that defendant raped her earlier that day and the previous day. Defendant was arrested and early the next morning, in a recorded interview, he provided a statement to Detectives Alfredo Beltran and Richard Soso. Although defendant spoke English, the interview was conducted in Spanish because that was the language defendant preferred. Detective Beltran's first language was Spanish, so he assumed responsibility for questioning defendant.

When defendant's custodial interrogation began, the detective gave him a copy of a <u>Miranda</u>[2] rights and waiver form written in Spanish. Detective Beltran read the Spanish form to defendant as he followed along. After each right was read to defendant, he was asked if he understood that right. Defendant responded affirmatively and initialed each right. Defendant also read the waiver of rights portion of the form aloud and signed the form.

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A-0624-18T1

The custodial interview lasted approximately twenty-five minutes. Defendant first denied assaulting his wife but eventually conceded he "overdid it some." He admitted he sexually assaulted her after he put "gauze" in her mouth and tied her hands and legs. Subsequently, defendant was indicted on two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(7) and two counts of first-degree kidnapping, N.J.S.A. 2C:13-1(b).

Defendant filed a motion to suppress his confession. At the suppression hearing, the State called Detective Beltran as its witness and moved the DVD recording of defendant's custodial interrogation into evidence without objection. The State also produced the English translation of defendant's Miranda warnings and waiver of rights form, which included defendant's responses, as follows:

> 1. You have the right to remain silent.
> Do you understand this right? Yes J[]M
>
> 2. Anything that you say could be utilized in your front of the Court.
> Do you understand this right? Yes JM
>
> 3. You have the right to consult with an attorney and to have him (them) present during the interrogation.
> Do you understand this right? Yes JM
>
> 4. If you don't have money for an attorney, one will be named to represent or assist you before asking you questions, if you so desire.
> Do you understand this right? Yes JM

5. At any time you can decide to make use of these rights and refuse to answer questions or make any statement.
Do you understand this right? Yes JM

WAIVER OF RIGHTS

I have read the Notice of Rights above appearing and understand what are my rights. I am willing to declare and answer questions. No promises or threats have been made to me and I have not being coerced or pressured in any way.
Signature (illegible)
Witness (illegible)
Date 8/15/05
Time 3[:]27 am

Defendant did not testify at the suppression hearing, but he argued that his statements to the police should have been suppressed because the Spanish version of the Miranda warnings contained serious errors. Specifically, he claimed he was not informed that his statements "could and would be [used] against him in a court of law." Defendant also contended the second sentence in the Miranda notice advising anything he said could be "utilized in your front of the court" was so defective linguistically that any statements flowing from his interview should have been suppressed. However, as Judge Deitch observed, "defendant did not argue that the police coerced, intimidated or tricked him into giving the statement."

4

In his November 15, 2016 opinion, the judge acknowledged the deficiency in question two of the Miranda form but found that under the totality of circumstances, "the essence of the warning [was] fulfilled" and defendant "was properly advised of the consequences of . . . speaking with police." Additionally, the judge found it was "unmistakable that [defendant] wanted to speak to the Detective." Further, the judge determined defendant "was calm and relaxed throughout the interview, he appear[ed] to have answered all questions posed and did not provide any objective sign of being recalcitrant." The judge denied defendant's motion to suppress, concluding he "was aware of his rights and freely and voluntarily waived those rights."

Defendant moved for reconsideration of the suppression ruling. Based on Detective Beltran's testimony during the suppression hearing, defendant reiterated the arguments he had advanced previously and argued the detective's "lack of fluency in Spanish" prevented him from realizing the deficient phrasing in the Miranda rights form defendant signed. Judge Deitch denied defendant's reconsideration motion, finding his arguments were "nothing more than a repetition or an extrapolation of his arguments already proffered and considered by this [c]ourt."

A-0624-18T1

In April 2018, defendant pled guilty to first-degree aggravated sexual assault and approximately four months later, he was sentenced to an eight-year prison term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

On appeal, defendant raises the following arguments:

POINT I:

A CRUCIAL SENTENCE OF THE MIRANDA WARNINGS WAS MISTRANSLATED IN THE SPANISH-LANGUAGE FORM AND BELTRAN[]'S TRANSLATION OF THAT SENTENCE INTO ENGLISH REPRODUCED THE INCOHERENT TRANSLATION OF THE FORM. A QUALIFIED NEUTRAL [INTERPRETER] WAS REQUIRED TO ENSURE THAT [DEFENDANT] PROVIDED A KNOWING, INTELLIGENT AND VOLUNTARY MIRANDA WAIVER.

    A.    The Prosecution's "Heavy Burden" Of Proving A Valid Miranda Waiver Under Federal Law Is Even Heavier In New Jersey.

    B.    The State Must Prove By Competent Evidence That A Defendant Had "The Requisite Level Of Comprehension" To Effectuate A Valid Waiver of His Miranda Rights.

    C.    Police Officers Have Neither the Qualifications nor the Neutrality to Act as Reliable Interpreters.

        i.    Inexpert interpreters create unreliable translation.

6

ii.    Using inherently biased police interpreters compromises both the interrogation and the resulting records.

iii.    The use of officers as interpreters not only compromises the interrogation itself but also creates unreliable and prejudicial records.

We find these arguments unavailing.

Our review of the trial court's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). "An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We defer to a trial court's findings "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Our deferential standard of appellate review extends to "factual findings based on a video recording or documentary evidence." State v. A.M.,

7

237 N.J. 384, 396 (2019) (quoting State v. S.S., 229 N.J. 360, 381 (2017)). "We owe no deference, however, to conclusions of law made by trial courts in deciding suppression motions, which we instead review de novo." State v. Brown, 456 N.J. Super. 352, 358-59 (App. Div. 2018) (citing State v. Watts, 223 N.J. 503, 516 (2015)).

Under Rule 4:49-2, a court "may reconsider final judgments or orders within twenty days of entry." Lee v. Brown, 232 N.J. 114, 126 (2018). Although Rule 4:49-2 does not expressly apply to criminal practice, courts have nevertheless applied its standards to motions for reconsideration in criminal actions. See State v. Puryear, 441 N.J. Super. 280, 294-95 (App. Div. 2015).

Reconsideration is "a matter within the sound discretion of the [c]ourt," Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)), and will not be set aside unless the trial court abused its discretion. Granata v. Broderick, 446 N.J. Super. 449, 468 (App. Div. 2016), aff'd, 231 N.J. 135 (2017). "[G]rounds for reconsideration are generally limited[,]" as "[t]he proper object of reconsideration is to correct a court's error or oversight." Puryear, 441 N.J. Super. at 294; see also Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Reconsideration is "not appropriate merely because a litigant is

dissatisfied with a decision of the court or wishes to reargue a motion[.]" Palombi, 414 N.J. Super. at 288.

Governed by these standards, we are satisfied Judge Deitch correctly found defendant freely, knowingly and voluntarily waived his Miranda rights. Indeed, his findings are supported by substantial credible evidence in the record. Likewise, we perceive no basis to disturb the judge's decision to deny defendant's motion for reconsideration.

Turning to defendant's argument that his statements should have been suppressed because the State failed to use a qualified, neutral interpreter during his custodial interview, we are not persuaded. Recently, our Supreme Court addressed whether it was necessary to "require qualified neutral interpreters in all interrogations where suspects speak limited English." A.M., 237 at 394-95. Noting any defendant "has the right to challenge a translation under N.J.R.E. 104(c), which governs pretrial hearings on the admissibility of a defendant's statement," the Court declined to impose a requirement for a qualified neutral interpreter to be present in all interrogations where suspects possess a limited proficiency in English.

We note that in A.M., the defendant challenged the adequacy of an English to Spanish translation by a prosecutor's office detective where the defendant felt

9                                                                    A-0624-18T1

more comfortable speaking in Spanish. Here, unlike the detective in A.M., Detective Beltran did not act as an interpreter. Instead, he administered Miranda rights in the language defendant acknowledged he understood and preferred. Further, the record is devoid of any indication defendant failed to understand the detective.

To the extent we have not addressed defendant's remaining arguments, we are satisfied they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0624-18T1