775 A.2d 1284

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. GINO A. DELUCA, DEFENDANT-APPELLANT.

Argued January 30, 2001—Decided July 10, 2001.

*Philip V. Lago,* Designated Counsel, argued the cause for appellant (*Peter A. Garcia,* Acting Public Defender, attorney).

*Michael J. Williams,* Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.,* Attorney General of New Jersey, attorney).

*Gino A. DeLuca,* submitted a supplemental brief pro se.

The opinion of the Court was delivered by

VERNIERO, J.

The principal issue in this appeal is whether exigent circumstances or some other exception to the warrant requirement justified the warrantless search of defendant's electronic pager device. The trial court concluded that the police had been justified in retrieving the information from the pager as a search incident to defendant's lawful arrest. The Appellate Division

disagreed, finding that the search of the pager was not reasonably contemporaneous with the arrest. *State v. DeLuca*, 325 *N.J.Super.* 376, 388, 739 *A.*2d 455 (App.Div.1999). The panel, however, sustained the search on an alternative basis proffered by the State. Given the possibility that the information stored in defendant's pager could have been erased easily or deleted by additional incoming calls, the court concluded that the warrantless search was valid on the ground of exigent circumstances. *Id.* at 389–92, 739 *A.*2d 455.

We agree with the Appellate Division in respect of exigent circumstances. In view of that conclusion, we need not address whether the retrieval of information by the police also was valid as an incident to a lawful arrest. With that modification, we affirm the judgment of the Appellate Division.

I.

These are the pertinent facts. On an evening in December 1995, Paul Palazzo drove defendant to a food mart in Millstone. Wearing a blue ski mask and armed with a pistol, defendant entered the food mart and demanded money from a worker behind the counter. When the worker did not immediately comply, defendant repeatedly struck him in the head with the pistol. The worker managed to escape and run out the front door of the store. Defendant chased him toward a neighboring gas station and fired a shot in the worker's direction. The bullet lodged in a window frame of the station.

An attendant at the gas station called the police, and Officer Steven Gonzalez of Hillsborough Township responded. A passerby informed the officer that a man was on Hamilton Road attempting to flag down passing cars. The officer investigated but did not see the man. He did see, however, a set of footprints that led him and another officer to defendant, who was trying to hide by covering himself in snow. The officers arrested defendant, searched him, and seized his pager.

After a brief stop at police headquarters during which defendant complained of frostbite, the police called for an ambulance to take defendant to St. Peter's Hospital. Officer Gonzalez rode to the hospital with defendant and carried the pager as State Police Detective Robert Roseman followed in a separate vehicle. On the way to the hospital defendant's pager sounded its tone or vibrated, indicating that it had received a page.

At the hospital Officer Gonzalez gave the pager to Detective Roseman. The detective noticed that the pager was activated and that it had recently received a page. He "scrolled" through the pager, retrieving three telephone numbers as well as the times at which those numbers were received. The telephone numbers obtained from the pager helped the State later prove that Palazzo was defendant's accomplice. Through the use of DNA analysis, the police successfully linked defendant to a blue ski mask found near the scene of the crime.

Defendant was indicted with Palazzo in August 1996 for conspiracy to commit armed robbery (*N.J.S.A.* 2C:5–2 and *N.J.S.A.* 2C:15–1), armed robbery (*N.J.S.A.* 2C:15–1), possession of a firearm for an unlawful purpose (*N.J.S.A.* 2C:39–4(a)), and unlawful possession of a firearm (*N.J.S.A.* 2C:39–5(b)). (The third and fourth counts against Palazzo were subsequently dismissed.) Prior to trial, defendant moved to suppress the evidence obtained from the pager on the ground that it was the fruit of a warrantless search in violation of his constitutional rights. At the suppression hearing, Detective Roseman testified that he was familiar with the kind of pager seized from defendant. The detective had inferred from the numbers on the pager (two of which had the suffix "911") that they could have led the police to the driver of the getaway car. That person, Palazzo, had been at large at the time of the search. Detective Roseman also testified that on the night of the incident he had assumed that defendant's pager could store only a finite number of pages in its electronic memory, and that once that capacity was reached, the pager would automatically delete the oldest message each time it received a new one.

The trial court denied defendant's motion, holding that the warrantless search of the pager was permissible because it occurred as an incident to the arrest. Thereafter, a jury convicted defendant on all counts. Defendant then pleaded guilty to unrelated counts of robbery and terroristic threats. In May 1998, the trial court sentenced defendant to an aggregate term of twenty-five years imprisonment with a nine and one-half year period of parole ineligibility.

Defendant appealed on several grounds, including that his motion to suppress had been erroneously denied. The Appellate Division rejected that argument. The Appellate Division focused its opinion on the denial of the suppression motion. The court agreed that the police properly obtained the information from the pager, but rejected the trial court's reasoning that the search was performed incident to the arrest. *DeLuca, supra,* 325 *N.J.Super.* at 388–89, 739 *A.2d* 455. Instead, the panel concluded that the search was justified by the exigent circumstances facing the police on the night of the robbery. *Id.* at 389–92, 739 *A.2d* 455.

Defendant also asserted that the trial court had committed numerous errors and that he had received ineffective assistance of counsel. We affirm the Appellate Division's rejection of those claims substantially for the reasons expressed in the opinion below. *Id.* at 392–94, 739 *A.2d* 455. We granted defendant's petition for certification, 163 *N.J.* 79 (2000), primarily to address the issues related to the search of the pager.

## II.

Consistent with the Fourth Amendment to the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution, police officers must obtain a warrant from a neutral judicial officer before searching a person's property, unless the search "falls within one of the recognized exceptions to the warrant requirement." *State v. Cooke,* 163 *N.J.* 657, 664, 751 *A.2d* 92 (2000). As a general rule, there is a reasonable expectation of privacy in the contents of one's pager. *United States v. Lynch,*

908 *F.Supp.* 284 (D.VI.1995); *People v. Bullock,* 226 *Cal.App.*3d 380, 277 *Cal.Rptr.* 63 (1990). The State does not dispute that the actions of the police in scrolling through and retrieving the data found on defendant's pager constituted a search under the federal and State Constitutions.

■ Once a court determines that a warrantless search has occurred, its inquiry shifts to whether the search fits within a valid exception to the warrant requirement. *Camara v. Municipal Court,* 387 *U.S.* 523, 528–29, 87 *S.Ct.* 1727, 1731, 18 *L.Ed.*2d 930, 935 (1967); *State v. Lund,* 119 *N.J.* 35, 37–38, 573 *A.*2d 1376 (1990). In that regard, the burden is on the State to prove that its search was permissible. *Vale v. Louisiana,* 399 *U.S.* 30, 34, 90 *S.Ct.* 1969, 1972, 26 *L.Ed.*2d 409, 413 (1970); *State v. Henry,* 133 *N.J.* 104, 110, 627 *A.*2d 125, *cert. denied,* 510 *U.S.* 984, 114 *S.Ct.* 486, 126 *L.Ed.*2d 436 (1993).

■ Exigent circumstances may excuse the need for the police to obtain a warrant. *State v. Lewis,* 116 *N.J.* 477, 483, 561 *A.*2d 1153 (1989) (citing *Vale, supra,* 399 *U.S.* at 34–35, 90 *S.Ct.* at 1971–72, 26 *L.Ed.*2d at 413–14). Generally stated, circumstances are exigent when they "preclude expenditure of the time necessary to obtain a warrant because of a probability that the suspect or the object of the search will disappear, or both." *State v. Smith,* 129 *N.J.Super.* 430, 435, 324 *A.*2d 62 (App.Div.), *certif. denied,* 66 *N.J.* 327, 331 *A.*2d 27 (1974). We have noted in other contexts that "the term 'exigent circumstances' is, by design, inexact. It is incapable of precise definition because, by its nature, the term takes on form and shape depending on the facts of any given case." *Cooke, supra,* 163 *N.J.* at 676, 751 *A.*2d 92. Consequently, the application of the doctrine of exigent circumstances demands a fact-sensitive, objective analysis. *State v. Bruzzese,* 94 *N.J.* 210, 219, 463 *A.*2d 320 (1983), *cert. denied,* 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984).

In determining whether exigency exists in a given instance, courts consider many factors. In this case, the pertinent factors would include the degree of urgency and the amount of time

necessary to obtain a warrant; the reasonable belief that the evidence was about to be lost, destroyed, or removed from the scene; the severity or seriousness of the offense involved; the possibility that a suspect was armed or dangerous; and the strength or weakness of the underlying probable cause determination. *DeLuca, supra,* 325 *N.J.Super.* at 391, 739 *A.*2d 455 (citing *State v. Alvarez,* 238 *N.J.Super.* 560, 568, 570 *A.*2d 459 (App.Div. 1990)). *See generally Cooke, supra,* 163 *N.J.* at 667, 751 *A.*2d 92 (outlining numerous cases in which exigency was present); *State v. Hutchins,* 116 *N.J.* 457, 463–68, 561 *A.*2d 1142 (1989) (same).

## III.

█ Applying those tenets, we hold that the warrantless search of defendant's pager was permissible under the federal and State Constitutions due to exigent circumstances. Defendant was suspected of committing the serious offense of armed robbery, and his accomplice was still at large at the time of the search. Because they knew that a weapon had been fired, the police officers were permitted reasonably to assume that defendant's accomplice was armed and dangerous. Moreover, Officer Gonzalez heard the pager's signal on the way to the hospital, and the police appropriately inferred that the page might be related to the robbery. The officer who conducted the search was familiar with defendant's type of pager, specifically its memory storage capacity. Thus, the incoming page put the police in reasonable apprehension of losing information in the event of a subsequent page. Under the totality of the circumstances, the State has sustained its burden of justifying the search.

Other courts have reasoned similarly and held that the warrantless retrieval of telephone numbers from a pager display is constitutionally permissible. In *United States v. Romero–Garcia,* 991 *F.Supp.* 1223 (D.Or.1997), *aff'd,* 168 *F.*3d 502 (9th Cir.1999), the district court denied the defendant's motion to suppress evidence retrieved from his pager. In that case, the police discovered the defendant's pager on his person about two hours

after his arrest "as part of a significant, multi-defendant cocaine distribution conspiracy investigation." *Id.* at 1224, 1225. The court found that the police search of the numbers on the pager was permissible because the police reasonably believed that the information could be lost if other numbers interceded, if the pager was turned off, or if the batteries ran out. *Id.* at 1225. *See also Bullock, supra*, 277 *Cal.Rptr.* at 65 (validating warrantless search of pager under exigent-circumstances exception to obtain "the electronic information before it became stale or was obliterated by successive incoming messages").

■ Lastly, "[w]e emphasize that there is a constitutional preference for a warrant, issued by a neutral judicial officer, supported by probable cause." *Cooke, supra*, 163 *N.J.* at 670, 751 *A.*2d 92. However, when the police act reasonably in the face of genuine exigency, their warrantless conduct is sustainable as part of the balancing of interests that constitutes the bulk of our search-and-seizure jurisprudence. Stated differently, the core inquiry in this setting is whether the police conduct was objectively reasonable under the totality of the circumstances. *Ohio v. Robinette*, 519 *U.S.* 33, 39, 117 *S.Ct.* 417, 421, 136 *L.Ed.*2d 347, 354 (1996); *State v. Stelzner*, 257 *N.J.Super.* 219, 229, 608 *A.*2d 386 (App.Div.), *certif. denied*, 130 *N.J.* 396, 614 *A.*2d 619 (1992). For the reasons already noted, the conduct here satisfies that test.

## IV.

As modified, the judgment of the Appellate Division is affirmed.

*For affirmance as modified*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.