SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Randy K. Manning (A-10-18) (080834)**

**Argued September 23, 2019 -- Decided January 13, 2020**

**ALBIN, J., writing for the Court.**

The primary issue in this appeal is whether, during the interim period between passage of the amendment to the New Jersey Wiretapping and Electronic Surveillance Control Act (Wiretap Act) in 2010 and the effective date of the Court's decision in State v. Earls, 214 N.J. 564 (2013), the constitutional warrant requirement and corresponding suppression remedy applied to securing cell-phone location information. This appeal also presents the issues of whether exceptions to the warrant requirement applied to securing that information and whether those same exceptions also applied to securing call-detail records under State v. Hunt, 91 N.J. 338 (1982).

Here, in 2011, after the Wiretap Act amendment went into effect but before the Court's decision in Earls, law-enforcement officers -- without a warrant or court order -- obtained defendant Randy K. Manning's cell-phone records by submitting an exigent-circumstances request to a cell-phone service provider. Thus, the constitutional propriety of the police conduct depends on the application of the exigent-circumstances doctrine.

On August 16, 2011, shortly after 8:00 a.m., the Bergen County Prosecutor's Office investigated the grisly murder of a victim who had died from multiple gunshot wounds and whose charred body was found in the rear of his Chevy. Detectives secured a judicially authorized warrant to search the vehicle. By the late afternoon or early evening of August 16, Detective John Frazer had two pieces of information that made defendant "a person of interest": defendant's fake California license was found in the Chevy owned by his friend, the victim, and defendant's timeline of his claimed whereabouts seemingly conflicted with the victim's cell-phone records.

Despite the securing of a search warrant earlier for the Chevy, Detective Frazer bypassed the warrant/court-order process and, that evening, submitted an exigent-circumstances request form to AT&T for defendant's cell-phone records. Detective Frazer admittedly used the exigent-circumstances request "as an investigatory tool." Although the detective stated that applying for a search warrant "was not practical at that time," he conceded that he could have applied for a telephonic warrant. He gave no estimate of the time that it would have taken to apply for a telephonic warrant or to

1

prepare an affidavit for a search warrant.  Nor did he estimate the time it would have taken to secure a warrant, given that a Superior Court judge was on call.

Based on the cell-phone records, defendant became the target of the investigation. The next day, Detective Frazer submitted three separate and detailed affidavits in support of three warrants, including one for a wiretap of, and another for further communications data from, defendant's cell phone.  According to Detective Gary Boesch, on August 17, defendant called the Bergen County Police Department and inquired whether the police wanted to speak with him.  The next day Detective Boesch returned defendant's call.  On August 19, defendant took public transportation to the Hackensack bus terminal, where Detective Boesch picked him up for questioning.

The trial court denied defendant's motion to suppress the warrantless search of his cell-phone records based on the exigent-circumstances exception.  Defendant was convicted of murder, desecration of human remains, and related crimes.  In an unpublished opinion, the Appellate Division reversed defendant's convictions on two grounds and remanded for a new trial.  First, the Appellate Division held that the trial court erred in not granting defendant's request for jury instructions on aggravated manslaughter and reckless manslaughter -- lesser-included offenses to the charge of murder.  Second, the Appellate Division held that the failure of the police to secure a warrant or court order for defendant's cell-phone records should have resulted in the suppression of those records.

The Court granted the State's petition for certification "limited to the issue of the admissibility of the defendant's cell phone records."  235 N.J. 311 (2018).

**HELD:**  During the three-year interim period between passage of the amendment to the Wiretap Act in 2010 and the effective date of the Court's Earls decision in 2013, individuals possessed a reasonable expectation of privacy in cell-phone location information cognizable under our State Constitution.  As in other contexts, exceptions to the constitutional warrant requirement -- such as consent or exigent circumstances -- apply to securing cell-phone records.  Therefore, in 2011, our Constitution required law-enforcement officers to obtain either a warrant or court order for cell-phone location information in accordance with the standards of N.J.S.A. 2A:156A-29 or to satisfy one of the exceptions to the warrant requirement.  It also follows that, under Article I, Paragraph 7, the exclusionary rule applies to unconstitutional searches and seizures of cell-phone records.  Here, the State did not obtain a warrant or court order and failed to satisfy its burden of proving that exigent circumstances justified the warrantless search, requiring suppression of defendant's cell-phone records.

1.  In 2013, in Earls, the Court held that Article I, Paragraph 7 of our State Constitution afforded individuals a reasonable expectation of privacy in their cell-phone location information.  214 N.J. at 588.  In light of the constitutional right to privacy safeguarded

2

by Article I, Paragraph 7, the Court declared that law enforcement "must obtain a warrant based on a showing of probable cause, or qualify for an exception to the warrant requirement," to secure cell-phone location information. Ibid. The Court determined that the Earls decision represented a new rule of law and therefore applied the warrant requirement for cell-phone location information prospectively. Id. at 591. The Court recognized, however, that since the 2010 amendment to the Wiretap Act, state law had required law enforcement to secure a court order or a warrant to obtain cell-phone location information from a service provider. Id. at 589 (citing N.J.S.A. 2A:156A-29). (pp. 18-23)

2. The Court now holds that the constitutional warrant requirement applied to cell-phone location information during the three-year interim period between passage of the amendment to the Wiretap Act in 2010 and the effective date of the Court's Earls decision in 2013. However, in light of Earls and the legitimate expectations of law enforcement under the Wiretap Act, the Court also determines that the standard for securing a court order for those records during the three-year interim period was the one set forth in the Act. That is, in the absence of an exception to the warrant requirement, to secure cell-phone location information from a service provider, law enforcement was required, at the very least, to obtain a court order based on "specific and articulable facts showing that there [were] reasonable grounds to believe that the record or other information . . . [was] relevant and material to an ongoing criminal investigation." See N.J.S.A. 2A:156A-29(e). The Court also expressly holds that following the 2010 amendment to the Wiretap Act, law-enforcement officers were justified in relying on well-established exceptions to the State Constitution's warrant requirement for securing cell-phone records, including the exigent-circumstances exception. Cell-phone records seized in violation of our State Constitution are subject to the exclusionary rule. (pp. 24-25)

3. When the State invokes the exigent-circumstances exception to justify a warrantless search it must prove that law-enforcement officers had an objectively reasonable basis to believe that securing a warrant was not practicable because immediate action was necessary to stop the flight of a suspect, to safeguard members of the public from a threat of harm, or to prevent the destruction of evidence. The Court has never held that a generalized concern about public or police safety or the preservation of evidence would justify a warrantless search or seizure. (pp. 25-31)

4. Detective Frazer was unable to articulate anything more than a generalized concern for public safety and the preservation of evidence as reasons for not complying with the warrant requirement. He did not identify an objectively reasonable basis to believe that there was a threat to the public or police, or that evidence might be destroyed, in the time it would have taken to obtain a warrant. After reviewing defendant's cell-phone records and determining that defendant was clearly a suspect, the next day Detective Frazer prepared three separate and detailed affidavits for search warrants. The Prosecutor's

3

Office did not make any concerted effort to immediately interrogate or detain defendant. A review of the totality of the evidence reveals that the Prosecutor's Office was able to comply with the dictates of the warrant requirement of our State Constitution during the murder investigation. The State failed to satisfy its burden of proving that the warrantless search of defendant's cell-phone records was objectively reasonable to meet the type of exigency recognized in our jurisprudence. For the reasons expressed, the Court affirms the judgment of the Appellate Division vacating defendant's convictions and remands the matter to the trial court. (pp. 31-36)

**AFFIRMED. The matter is REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.**

State of New Jersey,

Plaintiff-Appellant,

v.

Randy K. Manning,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| September 23, 2019 | January 13, 2020 |

William P. Miller, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause for
appellant (Mark Musella, Bergen County Prosecutor,
attorney; William P. Miller, of counsel and on the briefs,
and Catherine A. Foddai, Legal Assistant, on the briefs).

Alison Perrone, First Assistant Deputy Public Defender,
argued the cause for respondent (Joseph E. Krakora,
Public Defender, attorney; Alison Perrone, of counsel and
on the brief, and Michael Confusione, Designated
Counsel, on the letter brief).

Frank Muroski, Deputy Attorney General, argued the
cause for amicus curiae Attorney General of New Jersey
(Gurbir S. Grewal, Attorney General, attorney; Sarah
Lichter, Deputy Attorney General, of counsel and on the
brief).

Rubin M. Sinins argued the cause for amicus curiae
American Civil Liberties Union of New Jersey
(Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins and
American Civil Liberties Union of New Jersey
Foundation, attorneys; Rubin M. Sinins, Herbert I.
Waldman, Annabelle Steinhacker, Alexander Shalom,
and Jeanne LoCicero, on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

Cell-phone records can reveal intimate details about peoples' lives and relationships -- the persons and groups with whom they associate, the doctors they choose, the religious services they attend, the stores they patronize, the recreational places they visit, and much more.[1]  See State v. Earls, 214 N.J.

---

[1]  The following is a glossary of terms used in this opinion and their meanings.

"Cell-phone records" refers to both "call-detail records" and "cell-phone location information."

"Call-detail records" refers to the phone numbers dialed from and received by a phone as well as "the date, time, and duration of those calls."  State v. Lunsford, 226 N.J. 129, 133 (2016).

"Cell-phone location information" refers to both "precision location information" -- the precise Global Positioning System (GPS) location of a phone -- and "cell-site records" -- records of when a cell phone connects to a particular cell tower or antennae, typically the one closest to the phone.  State v. Earls, 214 N.J. 564, 576-77 (2013).  Cell-site records provide a historic record of the precise cell site with which a cell phone connects, and when. The distance between cell sites can range from miles to a matter of yards, depending on the number of towers or antennae.  Id. at 577-78.

2

564, 586 (2013); State v. Lunsford, 226 N.J. 129, 131 (2016); State v. Hunt, 91 N.J. 338, 345 (1982). In Earls, we recognized that individuals have an expectation of privacy in cell-phone location information cognizable under the New Jersey Constitution. 214 N.J. at 588. Accordingly, we held that law-enforcement officers may secure such information from a cell-phone service provider only when armed with a judicial warrant supported by probable cause or when justified by an exception to the warrant requirement. Id. at 588-89. We applied Earls, decided in 2013, prospectively. Id. at 591.

We acknowledged, however, that since a January 12, 2010 amendment to the New Jersey Wiretapping and Electronic Surveillance Control Act (Wiretap Act), the securing of cell-phone location information required law-enforcement officials to obtain a court order based on a reasonable-grounds standard supported by specific and articulable facts, or a warrant. See id. at 591-92; N.J.S.A. 2A:156A-29(c) and (e). That statutory scheme does not provide for an exigent-circumstances exception (other than in one limited circumstance) or a suppression remedy for unlawfully acquired cell-phone location information. See N.J.S.A. 2A:156A-27, -29(c) and (e), -32, and -34.

In the case before us, in 2011, after the Wiretap Act amendment went into effect but before our decision in Earls, law-enforcement officers -- without a warrant or court order -- obtained defendant Randy K. Manning's

3

cell-phone records by submitting an exigent-circumstances request to a cell-phone service provider. Defendant was convicted of murder, desecration of human remains, and related crimes. The Appellate Division reversed, in part, on the ground that the trial court erred in not suppressing defendant's cell-phone records.

Defendant argues that no legitimate exigency justified the violation of the Wiretap Act's warrant/court-order requirement and therefore his cell-phone records introduced at his murder trial should have been suppressed. The State contends that the law-enforcement officers faced exigent circumstances that justified securing the cell-phone records without a warrant or court order based on the heinous nature of the crime under investigation, the murderer's fugitive status and effort to conceal his identity, and the fear that evidence might be destroyed by the delay in seeking a judicial order.

The 2010 amendment to the Wiretap Act provided individuals with an expectation of privacy in their cell-phone location information. Earls, 214 N.J. at 589. We now hold that the protection against unreasonable searches and seizures in Article I, Paragraph 7 of our State Constitution also conferred an expectation of privacy in that information since 2010. Therefore, in 2011, our Constitution required law-enforcement officers to obtain either a warrant or court order for cell-phone location information in accordance with the

4

standards of N.J.S.A. 2A:156A-29 or to satisfy one of the exceptions to the warrant requirement. Here, the constitutional propriety of the police conduct depends on the application of the exigent-circumstances doctrine.

In view of the totality of the evidence, we conclude that the State did not establish that the exigent-circumstances exception justified securing defendant's cell-phone records without a warrant or court order. Indeed, during the period the perpetrator remained at large and the nature of the threat assessment remained unchanged, law-enforcement officers secured warrants before and after they obtained defendant's cell-phone records by an exigent-circumstances request. The State failed to demonstrate that there was an objectively reasonable basis to believe that lives might be endangered or evidence destroyed in the time necessary to secure a warrant. See State v. Johnson, 193 N.J. 528, 552-53 (2008); State v. DeLuca, 168 N.J. 626, 632-33 (2001).

Accordingly, the improperly obtained cell-phone records should have been suppressed. The wrongful admission of that information at defendant's trial requires the reversal of his convictions. We are therefore compelled to remand for a new trial.

I.

We turn first to the procedural history and facts.

5

In December 2011, a Bergen County grand jury returned an indictment charging defendant Manning with twelve offenses, including murder, N.J.S.A. 2C:11-3(a)(1); felony murder, N.J.S.A. 2C:11-3(a)(3); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree aggravated arson, N.J.S.A. 2C:l7-l(a); second-degree desecration of human remains, N.J.S.A. 2C:22-l(a)(l); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(4); and second-degree burglary, N.J.S.A. 2C:18-2.

Before trial, defendant moved to suppress the admission of his cell-phone records that were secured, without a warrant or court order, based on an exigent-circumstances request to his cell-phone provider. The trial court conducted a suppression hearing at which one witness testified -- Detective John Frazer of the Bergen County Prosecutor's Office. The record is mostly drawn from Detective Frazer's testimony at the hearing and one of the affidavits he prepared for warrant applications for phone records and wiretaps.

Sometime between 4:00 and 4:30 a.m. on August 16, 2011, a resident of Village Circle West in Paramus was awakened by the sounds of a barking dog and a car alarm. Looking out his window, he saw a light-skinned man walk away from a 2001 black Chevy Tahoe with New York license plates. Later that morning, at approximately 7:56 a.m., the resident called 9-1-1 to report a suspicious vehicle.

When Paramus Police officers arrived, they peered through the Chevy's rear windows and observed a sheet covering what appeared to be burnt human remains. At least eleven detectives from the Bergen County Prosecutor's Office responded to the scene and began their investigation. Detective Frazer joined his colleagues at approximately 8:30 a.m., remained at that location for about two hours, and then went to his office. There, in accordance with his assigned duties, he began to compile information and prepare affidavits for warrant applications while detectives investigated in the field.

The Chevy's license plate number matched a vehicle registered to Rhian Stoute of Brooklyn, New York. A copy of Stoute's fingerprints matched the body in the vehicle.[2] By 10:10 a.m., an autopsy indicated that Stoute had died from multiple gunshot wounds to the head and torso and that his body had been set on fire after his death.

Bergen County detectives spoke with Stoute's mother, who provided them with her son's cell-phone number. At approximately 3:11 p.m., Detective Frazer submitted to Sprint Nextel an exigent-circumstances request

---

[2] Stoute's prints and booking photo were in the Automated Fingerprint Identification System because of a prior arrest for weapons possession.

for Stoute's cell-phone records.[3]  Approximately twenty minutes later, Sprint Nextel produced Stoute's cell-phone records.  Although the records could not identify the present location of Stoute's phone, which was either turned off or not functioning, they did pinpoint the various cell-site locations with which Stoute's cell phone connected the previous day.  Assuming that Stoute was in possession of his cell phone, he traveled in the afternoon from New York City to various points in Bergen County, visiting in the early evening the vicinity of Englewood Hospital, where he made his last outgoing call around 7:15 p.m.  That cell phone, however, was in Brooklyn when it received an incoming call that went unanswered at around 8:20 p.m.

At approximately 4:30 p.m. on August 16, detectives interviewed Stoute's friend Brendan Dunbar, who provided the following information.  Earlier that day, he became concerned about Stoute's failure to show up for a meeting and called one of Stoute's friends -- defendant.  Defendant told Dunbar that he "had been with [Stoute] on August 15, 2011, sometime between 7:00-8:00 p.m. in Brooklyn," when Stoute dropped him off at a train station.  Detective Frazer believed that defendant's purported account to Dunbar conflicted with Stoute's cell-site records.

---

[3]  Detective Frazer specifically requested "incoming and outgoing call data . . . , which included cell sites, subscriber information[,] and precision location of the mobile device through GPS, for the previous seven days."

8

During this period, detectives obtained a judicial warrant to search the Chevy and discovered a fraudulent California driver's license between the seat and center console. Detective Frazer matched the photograph on the license with a photograph of defendant.

At approximately 7:39 p.m. on August 16, Detective Frazer submitted an exigent-circumstances request form to AT&T, seeking information related to defendant's cell phone, such as incoming and outgoing calls and cell-phone location information for August 15 and 16. The exigent-circumstances form submitted to AT&T stated: "Suspect is armed and considered extremely dangerous. Poses a threat to law enforcement."

Detective Frazer did not claim that defendant was a suspect at that time. In Frazer's mind, defendant was only "a person of interest" who might have critical information about who committed the murder. At that point, no witness interviewed had indicated that defendant possessed a weapon or had harmed Stoute. Detective Frazer stated that he submitted the exigent-circumstances request form as "an investigatory tool," allowing for the possibility that the cell-phone records might exculpate defendant.

Detective Frazer acknowledged that he could have sought a telephonic warrant from a judge but decided that "[i]t was not practical at that time" and therefore opted to secure the records "as fast as possible" by means of the

9

exigent-circumstances request. He gave as reasons for the exigency, the need "to find out in a timely fashion" who killed Stoute and to identify any witnesses or conspirators. He also explained that the killer had taken steps to conceal his identity and obstruct the investigation: the "body was badly burned to deter us from identifying [the victim]," and Stoute's cell phone was not found in the car.

At approximately 8:00 p.m. on August 16, AT&T produced defendant's cell-phone records. The cell-site records revealed that defendant's and Stoute's cell phones traveled the same general path on August 15 and were in the same general location at the time Stoute made his last outgoing call. Those records also indicated that defendant's cell phone was pinging off a cell site about six-tenths of a mile from the location of Stoute's Chevy at approximately the same time that the Paramus resident observed a light-skinned male walk away from the vehicle containing Stoute's body.[4] Based on the cell-phone records, defendant became the target of the investigation.

The next day, Detective Frazer submitted three separate and detailed affidavits in support of three warrants: one for wiretapping calls between defendant's phone and another person's phone, one for receiving

---

[4]  The carrier could not determine the location of defendant's cell phone at the time of the exigent-circumstances request because evidently his cell phone was off.

10

communications data for defendant's phone and three other persons' phones, and another for securing records related to a second phone belonging to Stoute. At approximately 9:15 p.m. on August 17, a Superior Court judge signed the requested warrants.

Despite defendant's status as a suspect, the Bergen County Prosecutor's Office did not act with any sense of urgency to interview or detain him. That is clear from the testimony of Bergen County Prosecutor's Detective Gary Boesch at a Miranda[5] hearing conducted before the same judge who later presided over the suppression hearing. According to Detective Boesch, on August 17, defendant -- having learned of the ongoing investigation -- called the Bergen County Police Department and inquired whether the police wanted to speak with him. Defendant received no response that day. The next day at approximately 2:30 p.m., Detective Boesch returned defendant's call, and, at the detective's request, defendant agreed to come in for an interview the following day. On August 19, defendant took public transportation to the Hackensack bus terminal, where, at approximately 11:00 a.m., Detective Boesch picked him up and transported him to the Prosecutor's office for questioning. During the interrogation, defendant confessed to shooting and

---

[5] Miranda v. Arizona, 384 U.S. 436 (1966).

11

killing Stoute but maintained that he did so by accident. He also admitted to setting Stoute's body on fire.[6]

## II.

## A.

The trial court denied defendant's motion to suppress the warrantless search of his cell-phone records based on the exigent-circumstances exception. The court concluded that, under the totality of the circumstances, Detective Frazer acted in an objectively reasonable manner in not securing a warrant or court order given "the urgency of the situation." The court catalogued the exigent circumstances that justified not obtaining a court order: the police were investigating a murder; the murder weapon had not been recovered; the perpetrator was potentially armed and dangerous and a threat to the public; the perpetrator attempted to conceal the crime by burning the body beyond recognition; and evidence might be lost or destroyed unless the police acted quickly.

Significantly, the exigent circumstances enumerated by the trial court remained unchanged during the period between August 16 and 19, when the Prosecutor's Office prepared detailed affidavits in support of search and

---

[6] At trial, defendant recanted this account and claimed that he observed a group of men kill Stoute.

12

wiretap warrants -- a point not addressed by the trial court.

B.

At the conclusion of a jury trial, defendant was convicted of a string of crimes, including murder, second-degree possession of a weapon for an unlawful purpose, third-degree arson, second-degree desecration of human remains, and third-degree hindering apprehension.[7] The trial court sentenced defendant to an aggregate sentence of life imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Under the Act, defendant must serve 63.75 years before he is eligible for parole. Ibid.

C.

In an unpublished opinion, the Appellate Division reversed defendant's conviction on two grounds and remanded for a new trial. First, the Appellate Division held that the trial court erred in not granting defendant's request for jury instructions on aggravated manslaughter and reckless manslaughter -- lesser-included offenses to the charge of murder. It concluded that, in light of the disputed forensic evidence, defendant's statement to the police that he accidentally shot Stoute "was sufficient to compel lesser included jury instructions."

Second, the Appellate Division held that the failure of the police to

---

[7] The jury acquitted defendant of felony murder and burglary.

13

secure a warrant or court order for defendant's cell-phone records should have resulted in the suppression of those records. It acknowledged that our 2013 Earls decision extended our State Constitution's warrant requirement to cell-phone location information and permitted exigent applications for that "information, recognizing the urgent need for such information when a person's life is endangered," citing Earls, 214 N.J. at 589. It pointedly noted that Earls applied prospectively -- and not to the events that occurred in 2011 in this case.

The governing law, the Appellate Division reasoned, was the 2010 amendment to the Wiretap Act, which required a warrant, court order, or consent for cell-phone records and which carved out only one statutory exigent-circumstances exception -- for cell-phone location information "when the law enforcement agency believes in good faith that an emergency involving danger of death or serious bodily injury to the subscriber or customer requires [immediate disclosure]," citing N.J.S.A. 2A:156A-29(c)(4) (emphasis added). Defendant's cell-phone records did not fall within that statutory exception. Accordingly, in the absence of an applicable statutory exigent-circumstances exception, the Appellate Division concluded that the detective's failure "to apply for a warrant or court order requires suppression of the cell-phone records."

14

Notably, the Wiretap Act does not provide a suppression remedy for a violation of N.J.S.A. 2A:156A-29 -- a point not addressed by the Appellate Division.

We granted the State's petition for certification "limited to the issue of the admissibility of the defendant's cell phone records." 235 N.J. 311 (2018). We also granted leave for the American Civil Liberties Union of New Jersey (ACLU) and the New Jersey Attorney General to participate as amici curiae.

III.

A.

The State argues that the Appellate Division erred in suppressing defendant's cell-phone records secured through an exigent-circumstances request. The State concedes that, in 2011, call-detail records "most likely" were protected by our State Constitution's warrant requirement, see Hunt, 91 N.J. 338, but submits that cell-phone location information was governed by the Wiretap Act, which does not provide a suppression remedy for a violation of N.J.S.A. 2A:156A-29. The State reasons that even if the Bergen County Prosecutor's Office lacked exigent circumstances to request defendant's cell-phone location information from the service provider, defendant would be without a suppression remedy under the Act. The State argues that the

exigent-circumstances exception applied because of the gruesome nature of the crime, which included the burning of the victim's body, and because of the objectively reasonable belief that defendant was a suspect at large, armed and dangerous; a threat to the safety of others; and capable of concealing or destroying evidence relevant to the investigation.

Amicus Attorney General essentially echoes the arguments advanced by the State.

B.

Defendant presents two arguments in support of affirming the Appellate Division's suppression of his cell-phone records. First, defendant asserts that the Wiretap Act was the law governing the acquisition of cell-phone location information by law enforcement in 2011. He submits that N.J.S.A. 2A:156A-29(c) of the Wiretap Act required law-enforcement officers to secure a warrant or court order for such information and provided for an exigent-circumstances exception in only one circumstance, not relevant here -- in the case of a subscriber who was in imminent danger.[8] Although defendant stresses the lack of a general exigent-circumstances exception in N.J.S.A. 2A:156A-29(c), there is no suppression remedy for a violation of that provision. See N.J.S.A.

---

[8] Defendant also implausibly argues that Hunt, which required law enforcement to secure judicial authorization for call-detail records, by its silence, did not recognize an exigent-circumstances exception.

16

2A:156A-27, -32, and -34.

Defendant urges the Court to adopt a suppression remedy by reasoning, from Earls, that the warrant/court-order requirement of N.J.S.A. 2A:156A-29(c) and (e), protecting cell-phone location information, gave rise to a reasonable expectation of privacy protected by our State Constitution. On that basis, defendant contends that the Bergen County Prosecutor's Office was constitutionally mandated to secure a warrant or court order and that the exigent-circumstances exception could not be invoked to obtain cell-phone location information.

Defendant nevertheless claims that the State failed to establish exigent circumstances justifying the acquisition of his cell-phone records, emphasizing that there was no showing that "the delay necessary to obtain a warrant posed a threat to law enforcement or the public" and that the investigating detectives exhibited a lack of urgency in contacting or detaining defendant -- the supposed prime suspect.

Amicus ACLU asks this Court to give guidance in analyzing the exigent-circumstances exception while noting that "[t]he factors which led the trial court to find such circumstances in this case are hardly extraordinary." It posits that bypassing the warrant requirement should occur "only in narrow circumstances, and not in circumstances that regularly arise in countless

17

criminal investigations."

IV.

A.

Article I, Paragraph 7 of the New Jersey Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause."[9] N.J. Const. art. I, ¶ 7. Article I, Paragraph 7 generally protects a person's reasonable expectation of privacy from untoward government intrusion. State v. Evers, 175 N.J. 355, 368-69 (2003) ("To invoke the protections of . . . Article I, Paragraph 7, defendant must show that a reasonable or legitimate expectation of privacy was trammeled by government authorities." (footnotes omitted)). That reasonable expectation of privacy extends to an individual's phone records, even when in the hands of third-party service providers. Earls, 214 N.J. at 568 ("[I]ndividuals do not lose their right to privacy simply because they have to

---

[9] The Fourth Amendment of the United States Constitution provides the same guarantees in nearly identical language. U.S. Const. amend. IV. Because, historically, this Court's jurisprudence in construing Article I, Paragraph 7 has conferred greater privacy rights to a person's call-detail records and cell-phone location information than federal law, our focus is primarily on New Jersey law. See Earls, 214 N.J. at 584; Hunt, 91 N.J. at 345.

18

give information to a third-party provider, like a phone company or bank, to get service.").

Because phone records are protected by Article I, Paragraph 7, law-enforcement officers must secure a warrant or court order from a judicial officer authorizing the search of such records or justify the search based on one of the "specifically established and well-delineated exceptions to the warrant requirement." See State v. Hemenway, 239 N.J. 111, 126 (2019) (internal quotation marks omitted); see also Earls, 214 N.J. at 569. Compliance with the warrant requirement is not a mere formality but -- as intended by the nation's founders -- an essential check on arbitrary government intrusions into the most private sanctums of people's lives. See Katz v. United States, 389 U.S. 347, 356-57 (1967); Johnson v. United States, 333 U.S. 10, 13-14 (1948). The constitutional preference for judicially issued warrants authorizing searches and seizures is long ingrained in our constitutional jurisprudence. See State v. Frankel, 179 N.J. 586, 597-98 (2004). Because, under our jurisprudence, searches and seizures without warrants are presumptively unreasonable, the State bears the burden of demonstrating by a preponderance of the evidence that an exception to the warrant requirement applies. Johnson, 193 N.J. at 552. Here, our focus is on the exigent-circumstances exception.

19

B.

We begin with a brief review of the constitutional protections addressing phone records.

In Hunt, we concluded that the New Jersey Constitution provides greater protection to telephone communications than the Fourth Amendment as construed by the United States Supreme Court. 91 N.J. at 345. ("New Jersey has had an established policy of providing the utmost protection for telephonic communications."). We indicated that our citizens have a reasonable expectation of privacy in call-detail records,[10] in part, because "[t]he telephone has become an essential instrument in carrying on our personal affairs." Id. at 346. We determined that Article I, Paragraph 7 of our State Constitution, unlike federal law, mandates that law enforcement secure judicial authorization for call-detail records. Id. at 348; see also State v. Mollica, 114 N.J. 329, 344 (1989) (providing that Article I, Paragraph 7 protection of a guest's hotel telephone billing records "is the sound and logical continuance of our broader view of the privacy that surrounds the use of a telephone and the extended protection that it deserves").

The combination of Hunt and Mollica established that the warrant

---

[10] Hunt used the term "toll billing records" in referring to completed long-distance telephone calls. For the sake of consistency, we use the current terminology -- call-detail records.

20

requirement applied to securing call-detail records. We never suggested in those cases that exceptions to the warrant requirement -- such as consent or exigent circumstances -- were inapplicable. We now make clear that, as in other contexts, exceptions to the constitutional warrant requirement apply to securing cell-phone records, including call-detail records.

In 2013, in Earls, we held that Article I, Paragraph 7 of our State Constitution afforded individuals a reasonable expectation of privacy in their cell-phone location information, at least equal to their privacy interest in call-detail records. 214 N.J. at 588.[11] We noted that cell phones are "an indispensable part of modern life" and that "details about the location of a cell phone can provide an intimate picture of one's daily life." Id. at 586. Phone records can reveal highly personal information about individuals' associations with people and organizations and trace their whereabouts both day and night.

---

[11] In Lunsford, we determined that the level of suspicion necessary to obtain call-detail records is "'specific and articulable facts showing that there are reasonable grounds to believe that' the records sought are 'relevant and material to an ongoing criminal investigation.'" 226 N.J. at 155 (quoting N.J.S.A. 2A:156A-29(e)). We maintained, however, that the greater privacy interest in cell-phone location information mandated that the State hew to the probable-cause standard. Id. at 132. Today, therefore, two different standards apply for obtaining a warrant or court order for call-detail records (specific and articulable facts showing that the records sought are relevant to an ongoing criminal investigation) and cell-phone location information (probable cause). Those same standards apply to the first prong of the exigent-circumstances exception for call-detail records and cell-phone location information.

21

See ibid. Phone records can track where and when individuals worship, attend political meetings, seek medical care, shop, spend their recreational time, and with whom. See ibid. We stated that people "are reasonably entitled to expect confidentiality" in the highly personal information that can be revealed by their cell phones and "do not expect law enforcement to convert their phones into precise, possibly continuous tracking tools." Id. at 587-88. In light of the constitutional right to privacy safeguarded by Article I, Paragraph 7, we declared that law enforcement "must obtain a warrant based on a showing of probable cause, or qualify for an exception to the warrant requirement," to secure cell-phone location information. Id. at 588.[12]

We determined that the Earls decision represented a new rule of law and therefore applied the warrant requirement for cell-phone location information prospectively. Id. at 591. We recognized, however, that since the 2010 amendment to the Wiretap Act, state law had required law enforcement to secure a court order or a warrant to obtain cell-phone location information from a service provider. Id. at 589 (citing N.J.S.A. 2A:156A-29). We noted in Earls:

---

[12] Five years after Earls, the United States Supreme Court in Carpenter v. United States, 585 U.S. ___, 138 S. Ct. 2206, 2217 (2018), recognized that the Fourth Amendment confers an expectation of privacy on cell-phone location information.

22

> Since 2010, the [Wiretap Act] has required that police get a court order for cell-site information based on less than probable cause. See N.J.S.A. 2A:156A-29e. Thus, even before today, there was some expectation of privacy as to cell-phone location information, and the police needed a form of judicial authorization to obtain that data.
>
> [Ibid.]

The amendment authorized a court to issue an order for cell-phone location information on a showing of "specific and articulable facts . . . that there are reasonable grounds to believe that the record or other information . . . is relevant and material to an ongoing criminal investigation." N.J.S.A. 2A:156A-29(c)(3) and (e). Law enforcement also can secure a warrant for such information. N.J.S.A. 2A:156A-29(c)(1). The Wiretap Act does not afford a suppression remedy when cell-phone records are acquired in violation of the Act's warrant/court-order requirement. N.J.S.A. 2A:156A-34 provides that the only remedies for "nonconstitutional" violations are those found in N.J.S.A. 2A:156A-27 and -32 (the filing of criminal charges and imposition of civil penalties). With the word "nonconstitutional," the Legislature evidently left open the possibility of a suppression remedy under the constitution, and therefore presaged our decision in Earls. See N.J.S.A. 2A:156A-27, -29, -32, and -34.

## C.

The issue in this case is whether, in 2011, those statutory safeguards, along with this State's avowed "policy of providing the utmost protection for telephonic communications," Hunt, 91 N.J. at 345, gave rise to a reasonable expectation of privacy in an individual's cell-phone location information cognizable under Article I, Paragraph 7. We conclude that, during the interim period between passage of the amendment to the Wiretap Act in 2010 and the effective date of our Earls decision in 2013, individuals possessed a reasonable expectation of privacy in cell-phone location information cognizable under our State Constitution. We now hold that the constitutional warrant requirement applied to cell-phone location information during the three-year interim period. However, in light of Earls and the legitimate expectations of law enforcement under the Wiretap Act, we also determine that the standard for securing a court order for those records was the one set forth in the Act.

That is, in the absence of an exception to the warrant requirement, to secure cell-phone location information from a service provider, law enforcement was required, at the very least, to obtain a court order based on "specific and articulable facts showing that there [were] reasonable grounds to believe that the record or other information . . . [was] relevant and material to an ongoing criminal investigation." See N.J.S.A. 2A:156A-29(e).

We expressly hold that following the 2010 amendment to the Wiretap Act, law-enforcement officers were justified in relying on well-established exceptions to the State Constitution's warrant requirement for securing cell-phone records, including the exigent-circumstances exception.  It also follows that, under Article I, Paragraph 7, the exclusionary rule applies to unconstitutional searches and seizures of cell-phone records.  See Evers, 175 N.J. at 376 (noting that the primary purpose of the exclusionary rule is to deter unlawful police conduct and compel compliance with commands of the Constitution).  Accordingly, cell-phone records seized in violation of Article I, Paragraph 7 of our State Constitution are subject to the exclusionary rule.

We next turn to a discussion of the exigent-circumstances exception.

V.

Generally, when the State invokes the exigent-circumstances exception to justify a warrantless search, it must prove by a preponderance of the evidence that (1) the search was premised on probable cause and (2) law enforcement acted in an objectively reasonable manner to meet an exigency that did not permit time to secure a warrant.  See In re J.A., 233 N.J. 432, 448 (2018); Johnson, 193 N.J. at 552.  For the reasons earlier expressed, because the events in this case occurred in 2011, during the interim period before Earls, the first prong is not governed by the probable-cause standard.  Rather, the

25

standard is whether law-enforcement authorities possessed "'specific and articulable facts showing that there [were] reasonable grounds to believe that' the [phone] records sought [were] 'relevant and material to an ongoing criminal investigation.'" Lunsford, 226 N.J. at 155 (quoting N.J.S.A. 2A:156A-29(e)).

Turning next to what constitutes an objectively reasonable response to an exigency, we first acknowledge that the exigent-circumstances exception is not susceptible to a precise definition because the unique facts of each case determines whether the need to act without delay is imperative. See Riley v. California, 573 U.S. 373, 402 (2014) ("[T]he exigent circumstances exception requires a court to examine whether an emergency justified a warrantless search in each particular case."); DeLuca, 168 N.J. at 632 ("[T]he application of the doctrine of exigent circumstances demands a fact-sensitive, objective analysis."). In determining whether exigent circumstances excused law-enforcement officers from obtaining a warrant, courts may consider such factors as (1) the seriousness of the crime under investigation, (2) the urgency of the situation faced by the officers, (3) the time it would have taken to secure a warrant, (4) the threat that evidence would be destroyed or lost or people would be endangered unless immediate action was taken, (5) information that the suspect was armed and posed an imminent danger, and (6) the strength or

26

weakness of the probable cause relating to the item to be searched or seized. Johnson, 193 N.J. at 552-53; DeLuca, 168 N.J. at 632-33.

In a case involving the search of the contents of a cell phone, the United States Supreme Court stated that, for Fourth Amendment purposes, the exigent-circumstances exception "applies when the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable." Riley, 573 U.S. at 402 (alteration in original) (internal quotation omitted) ("Such exigencies could include the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury.").

Two recent United States Supreme Court cases illustrate the kind of exigent circumstances that would justify dispensing with the warrant requirement for securing cell-phone data from a cell phone seized by the police ("a suspect texting an accomplice who, it is feared, is preparing to detonate a bomb, or a child abductor who may have information about the child's location on his cell phone") and for securing cell-phone location information from a service provider ("searches related to bomb threats, active shootings, and child abductions"). Id. at 402; Carpenter v. United States, 585 U.S. ___, 138 S. Ct. 2206, 2213 (2018). To be sure, those are extreme examples, and exigency can

be premised on less dramatic circumstances.  The point generally, however, is that law-enforcement officers must have "an objectively reasonable basis to believe that" securing a warrant is not practicable because immediate action is necessary to stop the flight of a suspect, to safeguard members of the public from a threat of harm, or to prevent the destruction of evidence.  See State v. Vargas, 213 N.J. 301, 323, 325 (2013).

Under our jurisprudence, there must be an objectively reasonable basis for the need for immediate action to justify foregoing the warrant requirement. See Johnson, 193 N.J. at 553; DeLuca 168 N.J. at 632.  We have never held that a generalized concern about public or police safety or the preservation of evidence would justify a warrantless search or seizure.  Certainly, permitting warrantless searches and seizures in the absence of an objectively reasonable necessity would severely undermine the warrant requirement.  As the United States Supreme Court explained, in the case of a murder investigation, "the mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment.  The investigation of crime would always be simplified if warrants were unnecessary." Mincey v. Arizona, 437 U.S. 385, 393 (1978) (citation omitted).

We have affirmed, under the rubric of exigent circumstances, the warrantless entry into a home after police headquarters received a suspicious

28

and unexplained 9-1-1 call from that residence and an officer had an objectively reasonable basis to believe that a person might be endangered or incapacitated inside, Frankel, 179 N.J. at 609-10; the warrantless entry into a home after an anonymous 9-1-1 report of a domestic violence incident by a man with a gun to ensure the safety of a young boy, State v. Edmonds, 211 N.J. 117, 137-38, 140 (2012);[13] and the entry into a hotel room shortly after a report of an armed robbery inside the room to ensure that no other victims might be endangered, State v. Hathaway, 222 N.J. 453, 461-63, 478 (2015).[14]

In State v. DeLuca, under the exigent-circumstances exception, we upheld the warrantless search of a pager because the police had a reasonable belief that delaying the search would result in the destruction of evidence and allow an armed and dangerous robber to elude capture. 168 N.J. at 633. In that case, the police arrested the defendant immediately after the armed robbery of a convenience store, but his accomplice, who the police reasonably believed was armed, remained at large. Id. at 629-30. The police seized a pager from the defendant. Id. at 629. The pager received an incoming page that the police reasonably feared would erase an older one because of the

---

[13]  In Edmonds, we also found that a search of the home that exceeded the scope of the reported exigency was unreasonable. 211 N.J. at 140.

[14]  We analyzed those cases under the public-safety exception, a subset of the exigent-circumstances doctrine.

29

pager's limited storage capacity. Id. at 630. An officer scrolled through the telephone numbers on the pager both to preserve evidence before its destruction and to secure information while the police were on the heels of an armed and dangerous accomplice. Ibid. Under the totality of the circumstances, exigent circumstances justified the warrantless search. Id. at 633.

Similarly, in State v. Minitee, exigent circumstances justified the warrantless search of a vehicle abandoned by armed robbers who had fled the scene. 210 N.J. 307, 321-24 (2012).[15] In that case, the vehicle, which could have been searched at the scene in the immediate aftermath of the robbery based on exigent circumstances, was towed to police headquarters. See id. at 313, 323. In the meantime, after apprehending one of the perpetrators, the police remained in active pursuit of another armed robber, investigated multiple sites, and searched for a missing gun. Id. at 312-14. Under those fraught circumstances, the vehicle was searched at headquarters for the missing gun and evidence of the identity of the perpetrator, who was being pursued. Id. at 322-23.

---

[15] Minitee was decided under the automobile exception to the warrant requirement, when that exception had an exigent-circumstances component. 210 N.J. at 319-20; see State v. Witt, 223 N.J. 409, 447 (2015) (holding that the exigent-circumstances component is no longer necessary for a probable-cause search of a vehicle when the automobile exception applies).

In all of those cases, there was an objectively reasonable basis to believe that lives might be endangered or evidence destroyed by the delay necessary to secure a warrant.[16]  In each instance, time was of the essence, and delay was not a reasonable option.

## VI.

### A.

Before reviewing the constitutionality of the warrantless seizure of defendant's cell-phone records, we begin with our standard of review.  We defer to the trial court's factfindings, provided they are "supported by sufficient credible evidence in the record."  State v. Elders, 192 N.J. 224, 243 (2007) (quotation omitted).  In contrast, clearly mistaken factfindings are not entitled to deference.  Id. at 244.  We review issues of law de novo and are not bound to follow the trial court's or Appellate Division's interpretive legal conclusions, unless persuaded that those conclusions are correct.  Vargas, 213 N.J. at 327.

### B.

On August 16, 2011, shortly after 8:00 a.m., the Bergen County

---

[16]  The time necessary to secure a warrant includes the time required to prepare and allow for review of the affidavit in support of the warrant, to contact a judge, and for the judge to review the papers and issue the warrant.  A telephonic warrant, in most cases, will take less time to secure.

Prosecutor's Office investigated a grisly murder of a victim who had died from multiple gunshot wounds and whose charred body was found in the rear of his Chevy. Without a suspect, knowledge of the circumstances surrounding the crime, or a motive, the detectives evidently had no difficulty securing a judicially authorized warrant to search the vehicle.

Stationed in his office, Detective Frazer was tasked with compiling information gathered in the field and preparing affidavits for warrant applications. By the late afternoon or early evening of August 16, Detective Frazer had two pieces of information that made defendant "a person of interest": defendant's fake California license was found in the Chevy owned by his friend, the victim, and defendant's timeline of his claimed whereabouts seemingly conflicted with the victim's cell-phone records.

With the limited information at hand, we accept that Detective Frazer had "specific and articulable facts" to establish that securing defendant's cell-phone records was "relevant and material to an ongoing criminal investigation." See Lunsford, 226 N.J. at 155 (quoting N.J.S.A. 2A:156A-29(e)). On that basis, the detective could have sought a court order for the records.

Nevertheless, despite the securing of a search warrant earlier for the Chevy, Detective Frazer bypassed the warrant/court-order process and, that

32

evening, submitted an exigent-circumstances request form to AT&T for defendant's cell-phone records. Detective Frazer admittedly used the exigent-circumstances request "as an investigatory tool." Although the detective stated that applying for a search warrant "was not practical at that time," he conceded that he could have applied for a telephonic warrant. He gave no estimate of the time that it would have taken to apply for a telephonic warrant or to prepare an affidavit for a search warrant, or the difficulty in doing so, given the limited information he had concerning defendant. Nor did he estimate the time it would have taken to secure a warrant, given that a Superior Court judge was on call.

Detective Frazer and his law enforcement colleagues were, of course, attempting to apprehend as quickly as possible a killer who was armed and had tried to conceal his crime. But Detective Frazer was unable to articulate anything more than a generalized concern for public safety and the preservation of evidence as reasons for not complying with the warrant requirement. He did not identify an objectively reasonable basis to believe that there was a threat to the public or police, or that evidence might be destroyed, in the time it would have taken to obtain a warrant.

Presumably, the potential threat posed by the fugitive killer remained a constant during the three days he was on the lam. Nevertheless, after

33

reviewing defendant's cell-phone records and determining that defendant was clearly a suspect, the next day Detective Frazer prepared three separate and detailed affidavits for search warrants, including one for a wiretap of, and another for further communications data from, defendant's cell phone. The warrants were issued at approximately 9:15 p.m. by a Superior Court judge. Even after the spotlight was shining on defendant, the Prosecutor's Office did not make any concerted effort to immediately interrogate or detain him. After speaking with the Prosecutor's Office, defendant took public transportation to Hackensack to be interviewed the next day.

We do not defer to the trial court findings because the court failed to consider critical facts and the applicable law.

In determining whether Detective Frazer's warrantless search of defendant's cell-phone records on the evening of August 16 was an objectively reasonable response to an exigency that did not permit time to secure a court order, we do not view the events through the "distorted prism of hindsight," Frankel, 179 N.J. at 599, but we also do not put on blinders. Any consideration of objective reasonableness must take into account the totality of the circumstances. Id. at 605. The Prosecutor's Office obtained a search warrant earlier in the day on August 16 and three search warrants the next day when a clear suspect was in sight. The State bore the burden of establishing

34

the existence of an objectively reasonable basis to believe that there was a threat to members of the public or of destruction of evidence that made the securing of a court order impracticable. See Johnson, 193 N.J. at 553; DeLuca, 168 N.J. at 632. Generalized fears do not meet that standard. A review of the totality of the evidence reveals that the Prosecutor's Office was able to comply with the dictates of the warrant requirement of our State Constitution during the murder investigation. The State failed to satisfy its burden of proving that the warrantless search of defendant's cell-phone records was objectively reasonable to meet the type of exigency recognized in our jurisprudence.

No one can doubt the urgency of finding a killer and solving a crime, nor the demands on law enforcement to do so. Murders and other serious crimes, including acts of terrorism, occur all too often. The challenges facing law enforcement in the course of a criminal investigation are many and should not be minimized. But criminal investigations, even of unsolved murders, must proceed in accord with the mandates of our Constitution. The warrant requirement places an independent judiciary as the ultimate arbiter of whether law enforcement can search a home or seize highly personal records -- unless a specifically delineated exception permits otherwise. Compliance with the warrant requirement cannot proceed on a selective basis, as happened here.

35

On many occasions, we have upheld searches based on exigent circumstances in situations that demanded an immediate police response to an objectively reasonable basis to believe that there was a threat to life or the preservation of evidence. Exceptions to the warrant requirement do not have endless elasticity. Those exceptions must be constrained within reason, otherwise they will swallow the rule.

## VII.

For the reasons expressed, we affirm the judgment of the Appellate Division, suppressing defendant's cell-phone records, which were secured without the requisite warrant or court order, and vacating his convictions.[17] We remand to the trial court for proceedings consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.

---

[17] As noted earlier, we did not disturb the Appellate Division's decision to vacate defendant's murder conviction and order a new trial based on the trial court's failure to give lesser-included charges to murder.